UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- v. -

JOSEPH CAMMARANO, JR.,
    a/k/a "Joe C,"
JOHN ZANCOCCHIO,
    a/k/a "Porky,"
JOSEPH SABELLA,
    a/k/a "Joe Valet,"
GEORGE TROPIANO,
    a/k/a "Grumpy,"
ALBERT ARMETTA,
    a/k/a "Al Muscles,"
DOMENICK MINIERO,
JOSEPH SANTAPAOLO,
    a/k/a "Joey Blue Eyes,"
SIMONE ESPOSITO,
ERNEST MONTEVECCHI, and
    a/k/a "Butch"
EUGENE CASTELLE,
    a/k/a "Boobsie,"

          Defendants.

- - - - - - - - - - - - - - - - - X

SEALED INDICTMENT

18 Cr. ___

18 CRIM 015

## COUNT ONE

### (Racketeering Conspiracy)

The Grand Jury charges:

1.  At all times relevant to this Indictment, JOSEPH CAMMARANO, JR., a/k/a "Joe C," JOHN ZANCOCCHIO, a/k/a "Porky," JOSEPH SABELLA, a/k/a "Joe Valet," GEORGE TROPIANO, a/k/a "Grumpy," ALBERT ARMETTA, a/k/a "Al Muscles," DOMENICK MINIERO, JOSEPH SANTAPAOLO,

a/k/a "Joey Blue Eyes," SIMONE ESPOSITO, and ERNEST MONTEVECCHI, a/k/a "Butch", the defendants, and others known and unknown, were members and associates of the Bonanno Organized Crime Family of La Cosa Nostra (the "Bonanno Organized Crime Family"). The Bonanno Organized Crime Family was a criminal organization whose members and associates engaged in numerous acts of violence and other crimes, including conspiracy to commit murder; assaults causing serious physical injury; extortion; loansharking; mail and wire fraud; and narcotics distribution.

2.  The Bonanno Organized Crime Family, including its leadership, membership, and associates, constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity (the "Enterprise"). This Enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Bonanno Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of New York and elsewhere and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

3.  The Bonanno Organized Crime Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra," which operated through entities known as "Families." In addition to the Bonanno Organized Crime

Family, five other Families operated in the New York City and New Jersey area, namely, the Gambino Organized Crime Family of La Cosa Nostra, the Lucchese Organized Crime Family of La Cosa Nostra, the Colombo Organized Crime Family of La Cosa Nostra, the Genovese Organized Crime Family of La Cosa Nostra, and the DeCavalcante Organized Crime Family of La Cosa Nostra. Members and associates of one La Cosa Nostra family would at times work together with one or more other La Cosa Nostra families in a jointly undertaken criminal venture.

4. The Bonanno Organized Crime Family operated through groups of individuals known as "crews" and "regimes," most of which were based in the five boroughs of New York City. Each "crew" had as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers were aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes were referred to as "connected," "on record," or identified as "with" a Soldier. Associates participated in the various activities of the crew and its members. In order for an associate to become a made member of the Family, the associate must first be of Italian descent and typically needed to demonstrate the ability to generate income for the Family and/or the willingness to commit acts of violence. Each Capo was responsible for supervising the criminal activities of his

crew and provided Soldiers and associates with support and protection. In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as a "tribute."

5. Above the Capos were the highest-ranking members of the Bonanno Organized Crime Family, commonly referred to as the "Administration." The head of the Bonanno Organized Crime Family was known as the "Boss," who was ordinarily assisted by an "Underboss" and a "Consigliere," or counselor. The Boss, Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes between and among members of the Bonanno Organized Crime Family, and resolving disputes between members of the Bonanno Organized Crime Family and members of other criminal organizations. The Administration of the Bonanno Organized Crime Family was also responsible for overseeing the criminal activities of the Family's Capos, Soldiers, and associates, and was at times called upon to make decisions regarding those criminal endeavors.

6. The Boss, Underboss, and Consigliere supervised, supported, protected, and disciplined the Capos, Soldiers, and associates, and regularly received reports regarding their various activities. In return for their supervision and protection, the Boss, Underboss, and Consigliere typically received part of the illegal earnings of each crew.

7. The Bonanno Organized Crime Family has taken

significant steps to protect and insulate its Administration members from detection and scrutiny by law enforcement. These steps include appointing multi-member committees, and/or "panels," to perform the function of Administration positions, including the Boss, and to oversee the daily affairs of the Bonanno Organized Crime Family; and naming temporary, or "Acting" Bosses and other Administration positions.

8.   While the overall structure of the Bonanno Organized Crime Family remained constant, the structure of the Family's Administration was sometimes adjusted to meet situations — including particularly the incarceration of the Boss, Acting Boss, and other high-ranking members of the Family — that threatened to impede the orderly operation and criminal activities of the Bonanno Organized Crime Family.

## THE RACKETEERING DEFENDANTS

9.   At all times relevant to this Indictment, JOSEPH CAMMARANO, JR., a/k/a "Joe C," JOHN ZANCOCCHIO, a/k/a "Porky," JOSEPH SABELLA, a/k/a "Joe Valet," GEORGE TROPIANO, a/k/a "Grumpy," ALBERT ARMETTA, a/k/a "Al Muscles," DOMENICK MINIERO, JOSEPH SANTAPAOLO, a/k/a "Joey Blue Eyes," and SIMONE ESPOSITO, the defendants, were members of the Bonanno Organized Crime Family. CAMMARANO, ZANCOCCHIO, SABELLA, TROPIANO, ARMETTA, MINIERO, SANTAPAOLO, and ESPOSITO participated in the operation and management of the enterprise as follows:

   a. CAMMARANO was, at times relevant to this Indictment, a Capo and the Acting Boss of the Bonanno Organized Crime Family.

   b. ZANCOCCHIO was, at times relevant to this Indictment, a Capo in and Consigliere of the Bonanno Organized Crime Family.

   c. SABELLA was, at times relevant to this Indictment, an Acting Capo and Capo in the Bonanno Organized Crime Family.

   d. TROPIANO was, at times relevant to this Indictment, a Soldier and Acting Capo in the Bonanno Organized Crime Family.

   e. ESPOSITO was, at times relevant to this Indictment, the Consigliere of the Bonanno Organized Crime Family.

   f. ARMETTA was, at times relevant to this Indictment, a Soldier in the Bonanno Organized Crime Family.

   g. MINIERO was, at times relevant to this Indictment, a Soldier in the Bonanno Organized Crime Family.

   h. SANTAPAOLO was, at times relevant to this Indictment, a Soldier in the Bonanno Organized Crime Family.

10. At all times relevant to this Indictment, ERNEST MONTEVECCHI, a/k/a "Butch," the defendant, was a soldier in the Genovese Organized Crime Family who associated with the Bonanno Family by engaging in criminal schemes with the defendants and other members and associates of the Bonanno Organized Crime Family to achieve the common purposes of the goals of the enterprise.

### PURPOSES OF THE ENTERPRISE

11. The purposes of the Enterprise included the following:

    a. Preserving and protecting the power, territory, and financial profits of the Enterprise through intimidation, violence, and threats of physical and economic harm;

    b. Promoting and enhancing the Enterprise and the activities of its members and associates;

    c. Enriching the members and associates of the Enterprise through, among other things, (1) the extortionate control of businesses, persons, and property through threats of physical and economic harm; (ii) the collection of debts through extortionate means; (iii) the distribution of narcotics; and (iv) mail and wire fraud.

### MEANS AND METHODS OF THE ENTERPRISE

12. Among the means and methods employed by the members and associates in conducting and participating in the conduct of the affairs of the Enterprise were the following:

a. Members and associates of the Enterprise generated income for the Enterprise through, among other things (i) extortion; (ii) the extortionate collection of debts; (iii) narcotics distribution; and (iv) mail and wire fraud.

b. Members and associates of the Enterprise conspired to commit murder, and they threatened, assaulted, and intimidated persons who engage in activity that jeopardized (i) the power and criminal activities of the Enterprise; (ii) the power of leaders of the Enterprise; and (iii) the flow of criminal proceeds to the leaders of the Enterprise.

c. Members and associates of the Enterprise at times engaged in criminal conduct or coordinated their criminal activities with leaders, members, and associates of other La Cosa Nostra Families. At other times, members and associates of the Enterprise met with leaders, members, and associates of other La Cosa Nostra Families to resolve disputes over their criminal activities.

d. Members and associates of the Enterprise attempted to identify and did identify individuals suspected of providing, or deemed likely to provide, information to law enforcement about the Enterprise, its members and activities, and about other La Cosa Nostra Families.

### THE RACKETEERING CONSPIRACY

13. From at least in or about 2012, up to and including

in or about January 2018, in the Southern District of New York and elsewhere, JOSEPH CAMMARANO, JR., a/k/a "Joe C," JOHN ZANCOCCHIO, a/k/a "Porky," JOSEPH SABELLA, a/k/a "Joe Valet," GEORGE TROPIANO, a/k/a "Grumpy," ALBERT ARMETTA, a/k/a "Al Muscles," DOMENICK MINIERO, JOSEPH SANTAPAOLO, a/k/a "Joey Blue Eyes," SIMONE ESPOSITO, and ERNEST MONTEVECCHI, a/k/a "Butch", the defendants, and others known and unknown, being persons employed by and associated with the Enterprise described above, namely, the Bonanno Organized Crime Family, which was engaged in, and the activities of which affected, interstate and foreign commerce, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Bonanno Organized Crime Family through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple acts:

    a. indictable under Title 18, United States Code, Sections 1951 and 2 (relating to extortion);

    b. involving extortion, chargeable under the following provisions of state law, namely, New York Penal Law Sections 155.40(2) and 155.05(2)(e) (grand larceny in the second degree by extortion); 105.10 (conspiracy in the fourth degree);

110.00 (attempt to commit a crime); and 20.00 (accessory liability).

      c. indictable under Title 18, United States Code, Sections 892, 894 and 2 (relating to extortionate credit transactions).

      d. indictable under Title 18, United States Code, Sections 1341 (relating to mail fraud), 1343 (relating to wire fraud), 1349 (mail and wire fraud conspiracy) and 2.

      e. involving murder, in violation of New York State Penal Law, Sections 125.25 (murder in the second degree); 105.15 (conspiracy in the second degree); 110.00 (attempt to commit a crime); and 20.00 (accessory liability).

      f. involving trafficking in controlled substances in violation of Title 21, United States Code, Sections 841 and 846.

      14. It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the Enterprise.

      (Title 18, United States Code, Section 1962(d).)

### COUNT TWO

**(Assault in Aid of Racketeering)**

The Grand Jury further charges:

      15. At all times relevant to this Indictment, the Bonanno Organized Crime Family, as described in paragraphs 1

through 12 of Count One of this Indictment, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, its membership, and its associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals engaged in, and the activities of which affected, interstate and foreign commerce. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

16. At all times relevant to this Indictment, the Bonanno Organized Crime Family, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), namely acts involving murder and extortion in violation New York Penal Law, acts indictable under Title 18, United States Code, Sections 892, 894, 1341, 1343, 1349, 1951, and acts involving trafficking in controlled substances in violation of Title 21, United States Code, Sections 841 and 846.

17. On or about October 31, 2015, in the Southern District of New York and elsewhere, ALBERT ARMETTA, a/k/a "Al Muscles," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary value from the

Bonanno Organized Crime Family, and for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno Organized Crime Family, an enterprise engaged in racketeering activity, as described above, did commit and aid and abet the commission of an assault resulting in serious bodily injury to an individual ("Victim-1"), to wit, ARMETTA assaulted and aided and abetted the assault of Victim-1 causing serious bodily injury, in violation of New York State Penal Law, Sections 120.05(1) and 20.00.

(Title 18, United States Code, Section 1959(a)(3) and 2.)

## COUNT THREE

### (Conspiracy to Commit Extortion)

The Grand Jury further charges:

18. Paragraphs 1 through 13 and 15 through 16 of this Indictment are repeated and incorporated by reference as though fully set forth herein.

19. At all times relevant to this Indictment, EUGENE CASTELLE, a/k/a "Boobsie," the defendant, was a soldier in the Lucchese Organized Crime Family who associated with the Bonanno Organized Crime Family by engaging in one or more criminal schemes with members and associates of the Bonanno Organized Crime Family.

20. From at least in or about the early 1990s to the present, in the Southern District of New York and elsewhere, JOSEPH CAMMARANO, JR., a/k/a "Joe C," JOHN ZANCOCCHIO, a/k/a "Porky,"

JOSEPH SABELLA, a/k/a "Joe Valet," GEORGE TROPIANO, a/k/a "Grumpy," DOMENICK MINIERO, and EUGENE CASTELLE, a/k/a "Boobsie," the defendants, and others known and unknown, unlawfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit extortion, as that term is defined in 18 U.S.C. § 1951(b)(2), by obtaining money and property from and with the consent of another person, which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in 18 U.S.C. § 1951(b)(3), to wit, CAMMARANO, ZANCOCCHIO, SABELLA, TROPIANO, MINIERO, and CASTELLE and other co-conspirators, not named as defendants herein, used threats of force and economic harm to collect and to attempt to collect payment from an individual in return for protection from physical and economic harm from members of La Cosa Nostra.

(Title 18, United States Code, Section 1951.)

### FORFEITURE ALLEGATION AS TO COUNT ONE

21. As a result of committing the offense alleged in Count One of this Indictment, JOSEPH CAMMARANO, JR., a/k/a "Joe C," JOHN ZANCOCCHIO, a/k/a "Porky," JOSEPH SABELLA, a/k/a "Joe Valet," GEORGE TROPIANO, a/k/a "Grumpy," ALBERT ARMETTA, a/k/a "Al Muscles," DOMENICK MINIERO, JOSEPH SANTAPAOLO, a/k/a "Joey Blue

Eyes," SIMONE ESPOSITO, and ERNEST MONTEVECCHI, a/k/a "Butch", the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963,

    a. any interest the defendants acquired or maintained in violation of Title 18, United States Code, Section 1962;

    b. any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, the enterprise named and described herein which the defendants established, operated, controlled, conducted, and participated in the conduct of in violation of Title 18, United States Code, Section 1962; and

    c. any property constituting, or derived from, any proceeds obtained, directly or indirectly, from the racketeering activity charged in Count One, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendants personally obtained.

### FORFEITURE ALLEGATION AS TO COUNT FOUR

22. As a result of committing the offense alleged in Count Four of this Indictment, JOSEPH CAMMARANO, JR., a/k/a "Joe C," JOHN ZANCOCCHIO, a/k/a "Porky," JOSEPH SABELLA, a/k/a "Joe Valet," GEORGE TROPIANO, a/k/a "Grumpy," DOMENICK MINIERO, and EUGENE CASTELLE, a/k/a "Boobsie," the defendants, shall forfeit to

the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendants personally obtained.

### Substitute Asset Provision

23.   If any of the above described forfeitable property, as a result of any act or omission of the defendants:

    a.   Cannot be located upon the exercise of due diligence;

    b.   Has been transferred or sold to, or deposited with, a third person;

    c.   Has been placed beyond the jurisdiction of the Court;

    d.   Has been substantially diminished in value; or

    e.   Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

        (Title 18, United States Code, Section 1963(m);
     Title 21, United States Code, Section 853(p); and
      Title 28, United States Code, Section 2461(c).)

_____
FOREPERSON

_____
Geoffrey S. Berman MS
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOSEPH CAMMARANO, JR., a/k/a "Joe C," JOHN ZANCOCCHIO, a/k/a "Porky," JOSEPH SABELLA, a/k/a "Joe Valet," GEORGE TROPIANO, a/k/a "Grumpy," ALBERT ARMETTA, a/k/a "Al Muscles," DOMENICK MINIERO, JOSEPH SANTAPAOLO, a/k/a "Joey Blue Eyes," SIMONE ESPOSITO, ERNEST MONTEVECCHI, a/k/a "Butch," and EUGENE CASTELLE, a/k/a "Boobsie,"

Defendants.

SEALED INDICTMENT

18 Cr. \_\_\_

(18 U.S.C. §§ 1951, 1959, 1962, and 2.)

GEOFFREY S. BERMAN
United States Attorney.

A TRUE BILL

Foreperson.