J5DAACASC                    Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

              v.                        18 CR 15 (AKH)

EUGENE CASTELLE,

              Defendant.

------------------------------x

                                        New York, N.Y.
                                        May 13, 2019
                                        4:45 p.m.


Before:

                HON. ALVIN K. HELLERSTEIN,

                                        District Judge


                        APPEARANCES

GEOFFREY S. BERMAN
      United States Attorney for the
      Southern District of New York
HAGAN SCOTTEN
JACOB FIDDELMAN
      Assistant United States Attorney

GERALD J. MCMAHON
      Attorney for Defendant Castelle

J5DAACASC                          Conference

```
 1                (Case called)
 2                THE COURT:  Be seated, please.
 3                We're now doing United States v. Eugene Castelle.
 4                For the government we have Hagan Scotten.
 5                MR. SCOTTEN:  Yes, your Honor.
 6                THE COURT:  And Jacob Fiddelman.
 7                MR. FIDDELMAN:  Good afternoon.
 8                THE COURT:  For the defendant, we have Gerald McMahon.
 9                MR. MCMAHON:  Good afternoon.
10                And I would like to --
11                THE COURT:  And Cassandra Williams.
12                MR. MCMAHON:  She will be assisting me at trial.
13                THE COURT:  How do you do, Mr. Castelle?
14                All right.  So, let me first tell you that we will
15      start on Tuesday, not Monday at ten o'clock.  We'll pick the
16      jury at that time.
17                Have you submitted your particular requests of voir
18      dire?
19                MR. MCMAHON:  Yes, your Honor.
20                MR. FIDDELMAN:  Yes, your Honor.
21                THE COURT:  And have you also submitted your requests
22      for charge?
23                MR. SCOTTEN:  Yes, judge.
24                MR. MCMAHON:  Yes, judge.
25                THE COURT:  OK.  I have to take up your several
```

1    motions by Mr. Castelle and by the government in regard to in

2    limine motions.

3              Is there anything else we have to cover today?

4              MR. SCOTTEN:  Yes, your Honor.  There's been a

5    superseding indictment mostly in the nature of a trial

6    indictment, so we would like to arraign the defendant on that

7    today if we can.

8              THE COURT:  I don't think I have a copy.

9              MR. SCOTTEN:  We'll bring up a copy, judge.

10             Mr. Castelle, kindly stand.

11             Are you Eugene Castelle, also known as "Boopsey".

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Have you read the superseding indictment

14   or had it read to you?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Have you had a chance to discuss it with

17   your counsel?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  This is an indictment of the grand jury,

20   right?

21             MR. SCOTTEN:  Yes, judge.

22             THE COURT:  How do you plead?

23             THE DEFENDANT:  Not guilty, sir.

24             THE COURT:  A plea of not guilty will be entered on

25   behalf of Mr. Castelle.

J5DAACASC                    Conference

1              OK.  Do you want this superseder read to you by me?

2              MR. MCMAHON:  No, judge.  We will waive the public

3       reading.

4              THE COURT:  Tell me what's different about this.

5              MR. SCOTTEN:  Not very much, judge.  The order of the

6       counts is different.  Obviously, eliminates the counts that

7       didn't pertain to this defendant.  He was originally in a

8       larger indictment.  The one substantive change is the extortion

9       count, now Count Two, has been changed from a conspiracy to

10      commit extortion to an attempted extortion.

11             THE COURT:  OK.

12             MR. SCOTTEN:  Everything else --

13             THE COURT:  -- racketeering conspiracy.

14             So, now Mr. Castelle has been arraigned.

15             What else do you have to do?

16             MR. SCOTTEN:  I think you're right, your Honor.  The

17      primary matter is three pending motions in limine.

18             THE COURT:  Why don't we start with Mr. Castelle's

19      motions.

20             Mr. McMahon, I'll hear you.

21             MR. MCMAHON:  Yes, your Honor.

22             The prior conviction of 2001, what's interesting is

23      that the government wants to stop us from cross-examining

24      Mr. Lovaglio about a conviction from like around 2005 because

25      it's too old but it wants to introduce on its own direct case

1     without even on cross-examination, a 2001 conviction.

2              As I pointed out, judge, the length of time diminishes

3     its probative value and the fact that it is an identical

4     enterprise and identical racketeering acts is so difficult to

5     get away from the argument of propensity.  How is a jury going

6     to think that he pled guilty in 2001 to being Lucchese, doing

7     gambling and extortion and he is on trial here for being a

8     Lucchese gambling and extortion?

9              THE COURT:  Can you split the argument?  That's the

10    argument of motive plan and the case under 404(b).

11             MR. MCMAHON:  Judge, I know that you can recite these

12    those things but really, there is nothing about the 2012 to '18

13    RICO conspiracy now.  There is different people than in 2001.

14    The players are not the same.  As your Honor saw, the extortion

15    is not even an extortion conspiracy.  It is an attempted

16    extortion by my client alone of breach.  And your Honor heard

17    that that involved two meetings where he supposedly went there

18    and said to Mr. Romano, I got a piece of paper.  That was it.

19    So, there's no Lucchese or anything behind him involved in that

20    because it's not a conspiracy count.  It's a standalone

21    attempted extortion and there are no others that are in the

22    indictment.

23             So, I just think, judge, yes, there is the Second

24    Circuit has said that they have an inclusionary approach but

25    that's just, there's no way that a jury would hear that and

1    then not say, well, of course, he did it.  He did it then.

2                THE COURT:  Mr. Scotten.

3                MR. SCOTTEN:  So, first off, your Honor, in terms of

4    the age of the conviction, 2001 is not unduly old.  You've seen

5    the cases.  It's the same age as the conviction your Honor

6    admitted as to Mr. Zancocchio in the previous incident which

7    was very similar, both racketeering acts, the same enterprise,

8    the same type of acts on trial.

9                I think your Honor was right then but it's even more

10   obviously, your Honor, is right now.  Clearly a jury can acquit

11   somebody even if there is proof they are prior members of the

12   same enterprise and there's conviction to that effect because

13   the jury acquitted Mr. Zancocchio.  Even leaving aside the case

14   law, we know factually that Mr. McMahon is wrong about that.  I

15   think that this is more of a side note.  We're actually

16   agreeing that Lovaglio's 2004 --

17               THE COURT:  Let's not talk about Lovaglio until we

18   reach Lovaglio.

19               Anything more to tell me about --

20               MR. SCOTTEN:  Yes.  This is a conviction for

21   racketeering with the same enterprise, committing the same

22   acts.  It goes not only to the 404(b) purposes your Honor hit

23   but also to direct proof of the charged conspiracy.

24   Mr. McMahon is wrong about the extortion count, not that that

25   matters.  It would be come in under racketeering because the

J5DAACASC                    Conference

1    defendant, as your Honor heard, tried to extort Mr. Romano by

2    saying you're with the Lucchese family and saying that he was

3    with the Lucchese family.  So, it also is relevant to the

4    extortion count.

5         THE COURT:  404(b)(2) provides that the admitted use

6    in a criminal case, the evidence may be admissible for another

7    purpose such as proving motive, opportunity, intent,

8    preparation, plan, knowledge, identity, absence of a state or

9    lack of access.  I think it satisfies those conditions and

10   therefore, I rule that the prior conviction is relevant.

11        Now, what are you going to say about that prior

12   conviction?  Are you going to produce it?  What are you going

13   to say about it?

14        MR. SCOTTEN:  Your Honor, I expect we'll introduce the

15   Certificate of Conviction.  We've provided the defendant with

16   an exhibit that's a redacted portion of his allocution in the

17   indictment.  So, we'll read-in that portion of the allocution

18   where he admits to the racketeering enterprise charged in Count

19   One of that indictment.  We'll show the portion of the

20   indictment that stays that racketeering enterprise was the

21   Lucchese family.  Then we'll do the portion of the allocution

22   where he admits the gambling and extortion predicates and we've

23   also redacted the indictments so it doesn't show all the other

24   things that he did not admit to.  So, we'll put before the jury

25   just those things.

J5DAACASC                    Conference

1           THE COURT:  Have you gone over these proofs with Mr --

2           MR. SCOTTEN:  I think he's seen the redacted versions.

3           THE COURT:  I think you can try to work it out

4      together.

5           MR. SCOTTEN:  We will, judge.

6           THE COURT:  Anything else, Mr. McMahon, on that point?

7           MR. MCMAHON:  No, your Honor.

8           THE COURT:  The second point you make is that the

9      expert on an overnight crime is John Corrilo should not

10     testify.

11          MR. MCMAHON:  Your Honor, I know that at the first

12     trial you had the government bifurcate his, testimony fact

13     witness and expert witness.  But, your Honor, I mean, if you

14     actually look at what the government is calling him for, it is

15     really not the subject.  It is not required.  It is not a

16     proper 701, 702, 703.  He is basically saying I see him go to a

17     Lucchese club.  I see him go to a Mafia funeral, wedding, a

18     Mafia this.  You can be an ordinary citizen in the city of New

19     York and fully understand that.  You don't need an expert.

20     What's even more troublesome --

21          THE COURT:  I don't know that the expert is going to

22     testify about specific pieces of evidence.  That's for the

23     jury.  I think what Mr. Scotten wants to do is to have an

24     expert to testify about the way that organized crime families

25     are structured.

1          Why don't you tell us, Mr. Scotten, what you do intend

2    to use Mr. Corrillo.

3          MR. SCOTTEN:  Your Honor is correct.  We do in this

4    case also intend to have Mr. Corrillo explain certain terms on

5    wiretaps unlike the previous trial.

6          THE COURT:  For example?

7          MR. SCOTTEN:  For example, what does the term "red

8    figure" mean?  "Red figure" in a gambling operation is a term

9    used between the bookmaker and his runners.  And it's a sort of

10   a temporary debt they accumulate that they then have to pay

11   back before the runner can profit.  It is, as your Honor can

12   gather, more complex than that which is why we need an expert

13   to explain it.

14         THE COURT:  As long as you don't link it to any

15   particular evidence in the case you can do that.

16         MR. SCOTTEN:  Well, so we were going to do is to play

17   a wiretap recording and then say, not say what's going on hear

18   but, say, Special Agent Corrillo, did you hear the term "put in

19   a beef", what does that mean?

20         THE COURT:  You are not going to do that.

21         MR. SCOTTEN:  We can have him define terms but you

22   don't want to us play recordings with him on the stand.

23         THE COURT:  All right.

24         MR. SCOTTEN:  And the other thing we were planning on

25   having him do --

1            THE COURT:  You can do the description of what the

2    term is and what the gambling operation does but you can't link

3    it to specific evidence and you can't play wiretaps.

4            MR. SCOTTEN:  So, if we do that, your Honor, you

5    prefer us to play the wiretaps later with --

6            THE COURT:  Relevant independently, it's different.

7            MR. SCOTTEN:  They are in many case, it's the

8    defendant or one of his co-conspirators discussing the gambling

9    operations.

10           THE COURT:  I don't want you to do that.  I don't want

11   the expert to tell the jury how to reason about the evidence in

12   this case.  The witness is giving expert testimony

13   structurally.  OK.  Clear?

14           MR. SCOTTEN:  Yes, your Honor.

15           Although, I would suggest he is allowed to testify

16   about facts in the case.  When a ballistics expert testifies

17   about ballistics he doesn't just say here is how guns work.  He

18   says I compared shell casings to the marks on this gun.  My

19   conclusion is they match

20           THE COURT:  That's a different issue.  We are not

21   going to do that.

22           MR. SCOTTEN:  OK.  So I understand that he can testify

23   about all the general structure in terms of using in the case

24   but don't put on, what he testifying as an expert, don't put on

25   specific recordings with him.

J5DAACASC                    Conference

1          THE COURT:  Right.

2          MR. SCOTTEN:  Understood, judge.

3          THE COURT:  Anything else, Mr. McMahon?

4          MR. MCMAHON:  Judge, on the last thing on expertise, I

5  don't know if he has ever been qualified as an expert in

6  gambling.  Being an expert on gambling --

7          THE COURT:  For the central aspect of the crime

8  families, every incident or expiration deals with the gambling

9  operation that's tied to loan sharking.  It all works together

10  and he can testify to that effect.

11          All right.  Now, Lovaglio.

12          The government put on Lovaglio.  Doesn't like some of

13  the things that came out of Lovaglio.  So, how should we deal

14  with that?

15          MR. MCMAHON:  I have read the direct and

16  cross-examination of Lovaglio both by Ms. Macedonio and

17  Mr. Meringolo.  I can assure the Court that I will not be

18  anywhere near as lengthy on cross-examination.  I fully

19  understand the parameters that your Honor drew during the trial

20  and I will certainly abide by that with regard to domestic

21  violence and the like.

22          So, I don't know that we need an advanced ruling on

23  the issue.  Your Honor is perfectly capable of keeping counsel

24  in line to what is the appropriate cross-examination.  And as I

25  say, I certainly --

J5DAACASC                    Conference

1          THE COURT:  Well, I prefer that way but let's see what

2     Mr. Scotten has in mind.

3          MR. SCOTTEN:  Yes, judge.  So, to start with why we

4     think we need an advance ruling.

5          THE COURT:  Just give me the specific issues.

6          MR. SCOTTEN:  OK.  Well, the first thing, judge, is I

7     think your Honor should grant our motion in all the areas where

8     it's unopposed by Mr. Pascal.  We named about 15 things that we

9     thought were appropriate to exclude as cross-examination and

10    Mr. Castelle responded to five of them.

11         THE COURT:  I can't rule on that until I know what the

12    direct testimony is going to be.  The issue comes up with

13    what's impeachable, and that is what we're talking about.

14         MR. SCOTTEN:  Absolutely, your Honor.  And of course,

15    if Lovaglio says something specific and one of these things

16    specifically rebuts it, we've opened the door and it comes in.

17    But assuming he doesn't ever talk about, for example, getting

18    bail in 2015 when he was arrested in the state case, we don't

19    think that comes up.

20         THE COURT:  Well, is there an allegation that he lied?

21         MR. SCOTTEN:  About that bail, no.  No, judge.

22         THE COURT:  So, the only aspect that comes in is his

23    credibility.

24         MR. MCMAHON:  Your Honor, one of the key points in my

25    response in my opposition with the government's application is

1    the relation between Lovaglio and his handlers, both with the

2    NYPD and federal agencies.  As the Supreme Court has made

3    clear, in Kyles v. Whitley, the integrity of an investigation

4    is clearly proper fodder for cross-examination.  The second

5    Circuit as upheld that principle.

6           The bias of Mr. Lovaglio to favor these law

7    enforcement agencies, the flip side of that, judge, is here is

8    a guy in 2015, he gets arrested.  He has prior violent felony

9    convictions.  He is under indictment.  He gets arrested and he

10   is released ROR with the intervention of law enforcement.

11          So, what they are basically telling --

12          THE COURT:  That's a law enforcement investigative

13   technique.  I don't think it should come in.

14          MR. SCOTTEN:  So, I could go down the other ones

15   pretty quickly, judge.

16          MR. MCMAHON:  Your Honor, the bias of him to favor a

17   police, his law enforcement handlers and they in turn giving

18   him, it's not just credibility as bias.  Bias is a proper

19   subject, your Honor.

20          THE COURT:  I don't think that proves the -- released

21   on ROR, that was New York Police Department, wasn't it?

22          MR. SCOTTEN:  It was, judge.

23          MR. MCMAHON:  Only because the agents stepped in and

24   said he's our guy.  Help him out.  Let me him go.

25          MR. SCOTTEN:  I'm sure --

J5DAACASC                         Conference

1          THE COURT:  Let's not argue back and forth.

2          MR. SCOTTEN:  Yes, judge.

3          THE COURT:  You can try to persuade me again after the

4   direct case but I'm not inclined to allow it.

5          MR. MCMAHON:  Very well, judge.

6          MR. SCOTTEN:  The next one, judge, is a 1985 drug

7   trafficking conviction.  It's 34-years-old.  It does not

8   directly go to credibility.  I understand that he was smuggling

9   drugs.  There's always some element of deceit in smuggling.  He

10   was doing it wearing a military uniform.  I think the

11   prejudicial effect far outweighs the probative value given his

12   old age and the fact that a lot of lies to ask him about, I

13   don't think there is any need to go into a 34-year-old drug --

14          THE COURT:  34-years-old?

15          MR. SCOTTEN:  Yes, judge, 1985 conviction.

16          THE COURT:  Doesn't that seem to be too old.

17          MR. MCMAHON:  Judge, it's not the conviction.  I don't

18   care about the conviction.  I care about the deceptiveness of

19   this individual who would literally trash the uniform of the

20   United States armed services of which both Mr. Scotten and I

21   are proud veterans.  Lovaglio deliberately used a military

22   uniform on multiple occasions to traffic kilos of cocaine from

23   Florida to New York.  That kind of deception is a diabolical

24   deception using the uniform in that fashion and isn't

25   emphasized by the fact that it occurred 34 years ago when he

1    was a 25 or 28-year-old individual.  He wasn't 15.  He was in

2    his mid 20s, if not later.  And he is taking advantage of a

3    uniform in a calculated way that is the clearest indication of

4    deception that I've ever seen, your Honor.

5          THE COURT:  How do you deal with six underlined "B"?

6    This is more than ten years old.

7          MR. MCMAHON:  Judge, in the same way that we deal with

8    it on my 2001 conviction.  If it's admissible for other

9    purposes it's not banned by that particular rule.  In this

10   case --

11         THE COURT:  But it's a substantive aspect of the case.

12   This one isn't.  This is collateral.

13         MR. MCMAHON:  Judge, I am not introducing the

14   conviction.  I am introducing the fact that he used military

15   uniforms to disguise and cover the trafficking of kilos of

16   cocaine.  I don't care about conviction.

17         THE COURT:  How did he move the cocaine?

18         MR. MCMAHON:  He had it in cars and had them driven by

19   guys wearing uniforms, military uniforms.  How much more

20   deceitful can you get?

21         THE COURT:  I think that's too far away and that's too

22   prejudice in its own right.  I rule that it can't be used.

23         MR. SCOTTEN:  The next issue, judge, is the various

24   crimes Lovaglio committed while he was in Fort Dix starting

25   some kind of business.

1        THE COURT:  How long ago was that?

2        MR. SCOTTEN:  Fairly recent.  They're from 2004

3   through 2011.  The problem is none of them, there are no

4   conviction and none of them have any bearing on deceit.

5        THE COURT:  They are just bad acts.

6        MR. SCOTTEN:  Just bad acts, judge.

7        MR. MCMAHON:  They're bad acts that are admitted by

8   the government and witness.  So, the fact that there isn't a

9   conviction speaks more to the lack of the government's

10  willingness to punish crime by its cooperators than it does to

11  allowing this particular individual to escape cross.

12        (Pause)

13        THE COURT:  I am going to reserve on that,

14  Mr. McMahon.  This is either going to be redundant or too far

15  afield or too given to digression.  But it depends on the

16  dynamics of the trial.  I can't really rule now.

17        MR. SCOTTEN:  The next one, judge, and we have two

18  left and I think we do want an advanced ruling on this.  The

19  reason we have to ask is --

20        THE COURT:  Just tell me what the issue is.

21        MR. SCOTTEN:  This business of Mr. Lovaglio shooting

22  at a car which he maintains was not occupied but which there

23  are notes from prior debriefing sessions where the agents seem

24  to have --

25        THE COURT:  What's this got to do with credibility?

J5DAACASC                   Conference

1          MR. MCMAHON:  He lied.  Your Honor, the government

2     stipulated at the last trial that Lovaglio told the agents that

3     there was somebody in the car when he shot at it.  So, what it

4     goes to the credibility, got on the stand and lied when the

5     government -- he said, A, he didn't do it and, B, he didn't

6     tell the agents that.

7          THE COURT:  We're dealing with a collateral fact and

8     the shooting overshadows everything else.  I think it's

9     excluded.

10          MR. SCOTTEN:  Just for record, your Honor, that is not

11     the stipulation of the prior trial.

12          THE COURT:  I think that's excluded.

13          MR. SCOTTEN:  Thank you, judge.

14          THE COURT:  What else, Mr. Scotten?

15          MR. SCOTTEN:  The last issue is the one that

16     Mr. McMahon started with which is his issue of cooperating with

17     law enforcement and we have no problem with the general idea

18     that he gets to cross-examine him on, didn't you cooperate with

19     law enforcement for many years?  What is not admissible are the

20     following acts, many of which your Honor already moved in are

21     admissible.  My receipt of bail from a state court judge --

22          THE COURT:  Didn't I already rule on that?

23          MR. SCOTTEN:  You did.  Lovaglio's unsuccessful

24     requests to have his cooperation agreement have different terms

25     in it which is not granted has no bearing.

J5DAACASC                    Conference

1          THE COURT:  I agree.

2          MR. SCOTTEN:  Lovaglio's inquiry with this NYPD

3   detective who was handling him about some investigation in New

4   Jersey in which Lovaglio was never charged, I think the

5   implication is he is looking for a favor but there's no actual

6   evidence of that either that he --

7          THE COURT:  Where is the federal involvement?

8          MR. SCOTTEN:  I'm not aware of any one, judge.

9          THE COURT:  If there is no federal involvement, it is

10   not going to be admitted.

11          MR. SCOTTEN:  The fact that Lovaglio later sued the

12   same detective, this is the ongoing suit your Honor heard

13   about.

14          THE COURT:  We are not getting into it.

15          MR. SCOTTEN:  Thank you, your Honor.

16          MR. MCMAHON:  Judge, can I be heard on these before --

17          THE COURT:  OK.  Let's take them each one at a time.

18          MR. MCMAHON:  Your Honor, Lovaglio is the main witness

19   against Mr. Castelle as he was the main witness against

20   Cammarrota and Zancocchio.  To say that the fact, what

21   Mr. Lovaglio has done is over a period of 20 years.  He has

22   committed some of the most numerous and serious violent

23   felonies and crimes, crimes which would have landed most people

24   in jail for 40 or 50 years.  He has spent less than ten years

25   or so in jail ten or 11 years and he has done that by

1   manipulating the criminal justice system, both state and

2   federal.

3           By going in to cooperate and pretending that, I am

4   going to be a good citizen.  I've seen the light.  I want to

5   help you out.  I want to help you get criminals.  And then he

6   goes back out and commits crime.  He gets caught again.  He

7   goes and cooperates with a different agency.

8           THE COURT:  He may have honest sincerity and such.

9           MR. MCMAHON:  Why can't I probe that?  I think he's a

10  flatout liar and he manipulated those agencies.

11          THE COURT:  The different circumstances and generally

12  speaking someone who promises and doesn't deliver on the

13  promise is not necessarily a liar.

14          MR. MCMAHON:  True enough.  But that's not Lovaglio.

15  He has a demonstrated record of making a promise to law

16  enforcement and within a blink of an eye going out and breaking

17  a promise.  If you do it often enough, judge, we can, a

18  reasonable jury could infer that that guy never had any

19  intention of following that promise when he made it.

20          THE COURT:  Mr. McMahon, I can't anticipate now how

21  this is going to come up and all that's going to come up.  This

22  is going to be a trial, the issue involving Mr. Castelle.

23  Lovaglio is an important interest and his testimony can be

24  impeached or his credibility and his bias.  But at a certain

25  point Lovaglio's inquisition will take over the trial and be a

J5DAACASC                    Conference

1   trial of Lovaglio.  This is not a trial of Lovaglio.  It's a

2   trial of Eugene Castelle.  I am not going to make rulings on

3   all these points but I intend to keep this a trial of

4   Mr. Castelle, not a trial of Lovaglio.

5            MR. MCMAHON:  Understood, judge.

6            MR. SCOTTEN:  I think those are all the specific

7   points that your Honor --

8            THE COURT:  I think I'd better just take this up and

9   see how the direct of this goes with the admonition I just gave

10  and deal with it as we go.

11           MR. SCOTTEN:  Your Honor, if that your ruling, I would

12  ask that to the -- the Court say now that to the extent

13  Mr. McMahon tries to argue in summation the government hid all

14  these things from the jury, the Court would be willing to

15  provide an instruction saying that it wasn't clear if these are

16  admissible.  Unfortunately, at the last trial the government --

17  by defense counsel for not bringing all this up on direct.

18           THE COURT:  You did not object?

19           MR. SCOTTEN:  No, but we will, judge.

20           THE COURT:  OK.  One of the problems at the last trial

21  is the government didn't object.

22           MR. SCOTTEN:  I've heard, your Honor.

23           THE COURT:  If the government is not going to object,

24  then I am not going to rule against them.

25           MR. SCOTTEN:  Understood, judge.

1          THE COURT:  You can object during the openings.  You

2     can object during the closings.  You can object during the

3     course of the trial.  OK.  Are we finished?

4          MR. SCOTTEN:  I think so, judge.

5          MR. MCMAHON:  Yes, your Honor.

6          THE COURT:  You know how I pick a jury, right,

7     Mr. McMahon?

8          MR. MCMAHON:  Yes, judge.

9          MR. SCOTTEN:  I remember from the last time, yes,

10    judge.

11         THE COURT:  See you Tuesday at ten.

12         (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25