UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA,                  :

      -against-                                      :        18 Cr. 15 (S-7) (AKH)

EUGENE CASTELLE,                           :

      Defendant.                                 :

-------------------------------------------------------------x


# SENTENCING MEMORANDUM ON
# BEHALF OF DEFENDANT EUGENE CASTELLE

        Gerald J. McMahon, Esq.
        *Attorney for Defendant Eugene Castelle*
        40 Fulton Street, 23rd Floor
        New York, New York 10038
        (212) 797-1877
        gm@geraldjmcmahon.com

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT..................................................................................................1

STATEMENT OF FACTS..........................................................................................................1

      A.      Personal Background................................................................................................1

      B.      Physical Condition....................................................................................................3

      C.      Education & Vocational Training..............................................................................3

      D.      Employment...............................................................................................................4

      E.      The Offense Conduct................................................................................................4

      F.      Objections to Presentence Report.............................................................................5

ARGUMENT................................................................................................................................6

      A..     Summary of Argument..............................................................................................6

      B.      The Applicable Legal Principles................................................................................6

      C.      The Applicable Guidelines Range.............................................................................8

      D.      A Guidelines Sentence Is Appropriate......................................................................9

CONCLUSION...........................................................................................................................11

**PRELIMINARY STATEMENT**

Defendant Eugene Castelle stands before this Court as a fifty-nine (59) year old man having been convicted by a jury of illegal gambling (Count One) and racketeering conspiracy (Count Three). He was acquitted by the jury of attempted extortion (Count Two).

Given those facts, this Court is charged with imposing a sentence that is "sufficient, but not greater than necessary, to fulfill the purposes of sentencing." See *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008), cert. denied, 556 U.S. 1268 (2009) (quoting 18 U.S.C. § 3553(a)). For the reasons set forth more fully herein, we respectfully submit that the Court should impose a sentence within the Guidelines imprisonment range of 33-41 months.

**STATEMENT OF FACTS**

**A**. **Personal Background**

Eugene John Castelle, Jr. was born on March 18, 1960 in New York, New York, one of three children of Eugene John Castelle, Sr. and Vincenza *(nee* Galignano) Castelle. Defendant's father died of lung cancer at the age of 60 in 1989. Prior to his death, he had been employed as a New York State corrections officer and then as a police officer with the U.S. Park Police. Defendant's mother, a homemaker, suffered from a heart condition and dementia, but ultimately died from medical complications resulting from a broken hip at the age of 83 in October 2018 at her home on Staten Island, New York. (PSR: 110).

Defendant has three full siblings: John Castelle (age 60) is married, resides on Staten Island with his wife, and works as the manager of a cigar shop; Laura Castelle (age 54) resides in Las Vegas, NV and is disabled; and Anthony Castelle (age 50) who lives on Staten Island and

is a retired sanitation worker. (PSR: 111).

Castelle told Probation that he was particularly close to his father and siblings while growing up. His father was the sole financial provider for the family and worked multiple jobs to pay all the necessary living expenses. Defendant explained that his mother suffered from a gambling addiction and generally lost all the money given to her by betting on horse races. Castelle recalled lacking adequate clothing and shoes at times, and that his mother sometimes forced him to steal food and other goods from local stores when he was as young as ten years old. (PSR: 112).

During his early childhood, Castelle reported that the family moved frequently. When his father was a corrections officer, the family lived for a time in Fishkill, New York. After taking the position with the U.S. Park Police, the Castelle family relocated to Brooklyn where defendant lived at various times in ten different rented apartments. (PSR: 114).

When he was 25-years old, defendant married Caroline Westhall in Brooklyn on November 15, 1985. Castelle met her while working as a "soda-jerk" at a neighborhood luncheonette which she patronized. Following his father's death in 1989, defendant experienced emotional problems which ultimately led to a divorce in September 1991. (PSR: 115).

On September 2, 1998, defendant married Christine Panzica on Staten Island. They met while she was working for one of his friends at a mortgage company. They were divorced in 2003 while Castelle was in federal custody. (PSR: 116).

Defendant has two children by virtue of a prior consensual relationship with Catherine Ferrentino (age 40). The children are five-year old fraternal twins, Eugene John and Francesca

Lilly Castelle. The children reside with their mother in a private house on Staten Island, attend school and are reported to be in good health. Prior to his remand, Castelle provided voluntary financial support; presently, Ms. Ferrentino relies on alimony payments from her ex-husband as well as monies from her current boyfriend. Defendant reported that Ms. Ferrentino had a difficult upbringing, marked by her mother's drug addiction and her father's abandonment, and added that he intends to pursue full custody of his children (and re-locating to Florida) following his release from jail. (PSR: 119).

### B. Physical Condition

Eugene Castelle was born prematurely at six-and-one-half months, requiring him to spend several months in a hospital to be treated for a variety of resulting medical problems. From infancy through age 37 in 1997, defendant underwent six hernia surgeries at United Hospital in Port Chester, New York. Additionally, Castelle was born with cataracts in both eyes, again resulting in numerous surgeries from infancy through age 20 in 1980 at New York Eye and Ear Infirmary of Mount Sinai in Manhattan. Finally, defendant underwent surgery on his right ear at the same hospital during 1990, when the removal of polyps required that the ear be removed and reattached. (PSR: 124, 125). Castelle is also prescribed two medications to treat a prostate condition. (PSR: 126).

### C. Education & Vocational Training

Castelle attended high school for two or three years in Brooklyn before dropping out to get a job. He earned his GED on March 18, 2003 while in federal custody. He also has practical knowledge of building, construction and safety-related accreditations, which he acquired during

his prior work experience. (PSR: 133-136).

### D. Employment

As reflected in his prior presentence report, defendant has an employment history dating back to 1974, when he was 14 years old. (PSR: 144). Following his release from federal prison in August 2008, Castelle worked full-time at various construction-related jobs:

| | |
|---|---|
| 9/08-12/31/09 | Laborer for 13 months at Kings County Hospital |
| 2010-2012 | Laborer and foreman for a roofing company in Brooklyn |
| 2012-2014 | Construction foreman for ACDM, Brooklyn construction company |
| 8/23/14-9/15/16 | Construction superintendent for Waldorf Demolition |
| 5/18-5/19 | Truck driver for Worldwide Plumbing Supply Co. |

### E. The Offense Conduct

Gambling: from 2012 until 2016, Castelle provided oversight to a gambling operation bankrolled and run on a day-to-day basis by Anthony Greco. Castelle's alleged status as a soldier in the Luchese Family was a factor in the gambling business. (PSR: 2, 33).

RICO Conspiracy: from 2012 through January, 2018, Castelle conspired with others to violate the racketeering laws of the United States through a pattern of racketeering acts (two predicate acts involving extortion, three involving gambling, and one involving mail and wire fraud). (PSR: 4)

The jury was not instructed to specify which racketeering acts they found proven, but that same jury convicted Castelle of substantive gambling and acquitted him of substantive attempted extortion. (PSR: 8, 54-56).

**F. <u>Objections to Presentence Report</u>**

The presentence report, following the government's cue, found the offense level to be 25 (PSR: 96) and the Criminal History Category to be II (PSR: 101), yielding a Guidelines imprisonment range of 63-78 months (PSR: 151). On August 15, 2019, the defense submitted a letter to Probation (a copy is appended hereto as Exhibit A) objecting to several of the factual assertions and calculations in the PSR. Specifically, defendant objected to Probation concluding that he impliedly threatened violence or instilled fear to collect debts (PSR: ¶¶ 52, 53), when there was no such evidence presented at trial. Defendant objected to Probation concluding that Castelle extorted the bookmaker Anthony Greco (PSR: ¶ 54), when there was no such charge in the indictment nor any such evidence presented at trial. Castelle also objected to the absurd conclusion by Probation that defendant extorted Breeze/Toby Romano (PSR: ¶ 55) when the defendant was acquitted of that charge by the jury and supposed victim Romano testified at trial that he was not extorted. Finally, Castelle objected to the conclusion by Probation that he engaged in a wire fraud scheme involving a "no-show" job (PSR: ¶ 56), because the jury did not so find and the weight of the evidence demonstrated that it was <u>not</u> a no-show job.

Castelle also objected to the three level enhancement for grouping based on the theory that the racketeering activity involved four separate acts. (PSR: ¶ 64, 90-92). As we pointed out, there was no extortion (Group 2), no attempted extortion (Group 3), nor any wire fraud (Group 4). There was only gambling, based on three separate gambling racketeering acts.

5

## ARGUMENT

### A. Summary of Argument

Eugene Castelle was convicted by the jury of gambling (Count One) and racketeering conspiracy (Count Three), based on three gambling predicate acts. Not content with the Guidelines range for the criminal conduct that defendant actually committed, the government distorts the record and cobbles together an array of adjustments and enhancements in an effort to persuade the Court to double Mr. Castelle's sentence. Just as the jury rejected the government's proof and arguments about extortion and threats of violence, this Court should reject the prosecution's artificially-inflated Guidelines range.

### B. The Applicable Legal Principles

In *United States v. Booker,* 543 U.S. 220 (2005) the Supreme Court rendered the Sentencing Guidelines "effectively advisory". *Booker*, 543 U.S. at 245. Post-*Booker*, as the Second Circuit observed, [i]t is now ... emphatically clear that the Guidelines are guidelines – that is, they are truly advisory." *Cavera*, 550 F.3d at189.

As a procedural matter, district courts "must treat the Guidelines as the starting point and the initial benchmark" in calculating a sentence. *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). However, sentencing courts may not presume that a Guidelines sentence is reasonable. See *Nelson v. United States*, 129 S.Ct. 890, 891-92 (2009) ("The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable" [emphasis in original]); see also *Cavera*, 550 F.3d at 189 ("district court may not presume that a Guidelines sentence is reasonable").

*Gall*, *Kimbrough* and *Nelson* have effectively restored the district courts' broad sentencing discretion by permitting them to impose a sentence after considering all the § 3553(a) factors, with the Guidelines being only one such consideration. *United States v. Jones*, 531 F.3d 163, 173-74 (2d Cir. 2008). Adhering to *Booker* and *Jones,* section 3553(a) requires this Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" § 3553(a)(2). 18 U.S.C. §3553(a). Section 3553(a)(2), in turn, requires this Court to consider:

> the need for the sentence imposed–
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2). Additionally, section 3553(a) obligates this Court to consider: "the nature and circumstances of the offense, and the history and characteristics of the defendant;" "the kinds of sentences available;" "the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... issued by the Sentencing Commission;" "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and "the need to provide restitution to any victims of the offense." *Id.* § 3553(a)(1), (a)(3) - (a)(7).

One district judge has carefully explained how sentencing operates under the post-*Booker* regime: "[s]entencing will be harder now than it was a few months ago. District courts cannot just add up figures and pick a number within a narrow range. Rather, they must consider all of the applicable factors, listen carefully to defense and government counsel, and sentence the person before them as an individual. *Booker* is not as an invitation to do business as usual." *United States* v. *Ranum,* 353 F. Supp.2d 984, 987 (E.D. Wis. 2005).

As explained below, applying the foregoing legal principles to the facts of this case confirms that the correct Guidelines imprisonment range for defendant is 33-41 months, and that a sentence within the Guidelines range would be just and appropriate.

## C. The Applicable Guidelines Range

Adopting the government's position expressed in a post-trial submission, Probation concluded that:

> the underlying racketeering activity involved four separate acts, which must be treated as separate groups, pursuant to § 3D1.1(a), and include the following: Group 1 (Illegal Gambling); Group 2 (Extortion [of bookmaker Anthony Greco]); Group 3 (Attempted Extortion [of Breeze/Toby Romano]); and Group 4 (Wire Fraud).

(PSR: ¶ 64). The grouping calculation added 3 levels to Probation's determination of defendant's adjusted offense level. (PSR: ¶ 92).

As we argued in our Objections Letter (see Exhibit A, page 2), those three levels should not be added because there were not four separate underlying criminal acts. The extortion of bookmaker Anthony Grecco was the creation of the fertile imagination of the trial prosecutors. No such charge was made by any of the seven or more grand juries that heard evidence

8

connected to this case. And of course, Grecco, the purported victim, did not testify at trial nor did he ever tell any law enforcement officer that he was, or had been, extorted by Castelle.

The attempted extortion of Breeze/Toby Romano was rejected by the jury due, in no small part, to the testimony of Romano himself who said he was not the victim of an attempted extortion. The jury was also, no doubt, greatly influenced by the testimony of cooperating witness John Pennisi – supposedly a member of the same crime family (Luchese) and even crew as Castelle – that he did not know of, and had never heard of, any violence committed by defendant or even directed by defendant.

The predicate act of wire fraud was not found proven by the jury and it is likely that the RICO conspiracy conviction was based on the three gambling predicate acts.

The offense level for gambling (Count One) is 16, which is less than the base offense level of 19 for RICO; thus, defendant Castelle's offense level is 19. With a Criminal History Category of II, defendant's correct Guidelines imprisonment range is 33-41 months.

### D. A Guidelines Sentence is Appropriate

A sentence within the Guidelines range of 33-41 months is appropriate in this case for a number of reasons. First, the criminal conduct commited by defendant is almost always prosecuted in state court and routinely results in a sentence of a fine and probation or a conditional discharge. In this case, one co-defendant (Armetta) pled guilty to illegal gambling and was sentenced to 3 months in jail.

Second, two co-defendants (Tropiano and Montevecchi), who pleaded guilty to RICO conspiracy, received comparable sentences (41 and 30 months respectively).

9

Third, while this Court may – at present – consider acquitted conduct in sentencing a defendant, it is likely that, in the very near future, the United States Supreme Court will prohibit this grotesquely un-American practice. Two months ago, the Supreme Court of Michigan held that reliance on acquitted conduct at sentencing violates due process based on the guarantees of fundamental fairness and the presumption of innocence. *People v. Beck*, 2019 Mich. LEXIS 1298, 2019 WL 3422585 (Michigan Supreme Court, July 29, 2019). It also bears noting that, while the United States Supreme Court has said (for the moment) that acquitted conduct *may* be considered at sentencing, that Court's pronouncements on what is constitutional are far from infallible. See *Plessy v. Ferguson* and *In re Korematsu*.

## **CONCLUSION**

For all the foregoing reasons, we respectfully request that the Court sentence defendant Eugene Castelle to a sentence of imprisonment with the Guidelines range of 33-41 months.

Dated: New York, New York
September 27, 2019

*/s/ Gerald J. McMahon*
Gerald J. McMahon, Esq.
*Attorney for Defendant Eugene Castelle*
40 Fulton Street, 23rd Floor
New York, New York 10038
212.797.1877
gm@geraldjmcmahon.com

To:   All Counsel
      (By ECF)

11

# Exhibit A

# GERALD J. McMAHON
ATTORNEY AT LAW
40 FULTON STREET, 23RD FLOOR
NEW YORK, NEW YORK 10038

(212) 797-1877 (TEL)
(212) 797-1419 (FAX)
gm@geraldjmcmahon.com (E-MAIL)

WEBSITE
www.geraldjmcmahon.com

LEGAL ASSISTANT
Cassandra Lapal

August 15, 2019

By Email

Stephanie M. McMahon
United States Probation Officer
500 Pearl Street
New York, New York 10007

Re: United States v. Eugene Castelle
S7 18 Cr. 15 (AKH)

Dear Officer McMahon:

On behalf of defendant Eugene Castelle ("defendant"), and pursuant to Fed. R. Crim. P. 32(f)(1), I submit the following corrections to the draft Presentence Report ("PSR") dated August 8, 2019:

¶ 8    If you are going to recite that "defendant was found guilty as charged in Counts 1 and 3 only ...", even a modicum of fairness would require that you state he was acquitted by the jury of Count 2.

¶ 52   Defendant has never threatened, expressly or implicitly, "to use violence in order to extract money from his victims in a variety of schemes ..." He was acquitted by the jury of the only charge involving a threat of violence. While that fact might be inconvenient to the government and Probation, it is, nonetheless, an indisputable fact.

¶ 53   Defendant "never instilled the fear of violence necessary to collect debts from bettors." No such evidence was ever presented at trial, nor does it exist.

¶ 54   Castelle never "engaged in extortions and attempted extortion." Nor did "he extort[] [gambler Anthony] Greco on an ongoing basis". In fact, defendant was not even charged with extorting Greco nor did the government proffer that conduct as an uncharged crime under Rule 404(b). Its obvious and only purpose in this PSR is to "gin up" Mr. Castelle's Guidelines. Thus, Grecco sustained **no** loss through extortion.

GERALD J. MCMAHON

Stephanie M. McMahon
August 15, 2019
Page Two

¶ 55    Castelle did not attempt to extort Toby Romano/Breeze. Not only did the jury so find, but Romano himself testified he was not the victim of an attempted extortion. Just because the government says that "the preponderance of evidence standard supports that the attempted extortion occurred" doesn't make it so.

¶ 56    Castelle did not engage in a wire fraud scheme involving a "no-show job" at a construction site. The jury did not so find and the weight of the evidence demonstrated that it was not a no-show job. The statement that defendant "almost never went to the job" is flatly false.

¶ 64    The underlying racketeering activity, as charged by the grand jury and found by the trial jury, did **not** involve "four separate acts, which must be treated as separate groups..." There was no extortion (Group 2), attempted extortion (Group 3), or wire fraud (Group 4). There was only gambling based on the three gambling racketeering acts.

¶ 70    The adjusted offense level for gambling is 16 which is less than the base offense level of 19 for racketeering (PSR: 63).

¶¶ 71-92    Not applicable.

¶ 93    Defendant's adjusted offense level is 19.

¶ 96    Defendant's total offense level is 19.

¶ 151   Based upon a total offense level of 19, and a CHC of II, the Guidelines imprisonment range is 33-41 months.

Very truly yours,

Gerald J. McMahon

GJM:cw
cc: Government Counsel
    (by email)