LEVITT & KAIZER
ATTORNEYS AT LAW
40 FULTON STREET
23rd FLOOR
NEW YORK, NEW YORK 10038-5077

RICHARD WARE LEVITT*
rlevitt@landklaw.com

NICHOLAS G. KAIZER*
nkaizer@landklaw.com

ZACHARY SEGAL**
zsegal@landklaw.com

EMILY GOLUB
    of counsel
emilygolublaw@gmail.com

*   ADMITTED IN NY, FLA., AND D.C.
**  AWAITING NY ADMISSION

TELEPHONE
(212) 480-4000

FACSIMILE
(212) 480-4444

March 31, 2020

Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

       Re: U.S. v. Castelle, 18 Cr. 15 (AKH)
          <u>Emergency Bail Application</u>

Dear Judge Hellerstein:

  We represent Eugene Castelle on appeal from the judgment of conviction and sentence entered in the above-captioned case and respectfully submit this application in reply to the Government's letter of March 31, 2020, filed in opposition to our motion to admit Mr. Castelle to bail pending appeal or, in the alternative, at least until the COVID-19 crisis has subsided. *See* 18 U.S.C. § 3143(b).

  We will keep this letter brief and focus on the what we consider the pivotal issues. We hope that all parties will give Mr. Castelle's motion the same consideration they would hope would be given to a similar motion made on behalf of a loved one; Mr. Castelle deserves no less.

  1. The Government asserts there is no danger to Mr. Castelle because "he previously, but no longer, had a respiratory infection" and that "no inmates have tested positive for the virus in the facility." Gov. Let at. 10. On the contrary, the BOP has reported, as of March 30, 2020, that at least one inmate, and staff member, at Danbury FCI tested positive[1] (and, as of this writing the BOP has not updated its statistics for March 31, although it claims to update daily at 3:00 pm). Moreover, to get beyond the sterile and incomplete statistics provided by BOP, here is what Mr. Castelle informs us are the actual

---

[1] *COVID-19 Corona Virus: COVID-19 Tested Positive Cases*, Bureau of Prisons (Mar. 31, 2020), at https://www.bop.gov/coronavirus/.

LEVITT & KAIZER  
ATTORNEYS AT LAW

Hon. Alvin K. Hellerstein  
March 31, 2020  
Page -2-

conditions at Danbury FCI (as of this afternoon). And, although he obviously has not done a head count of staff when he reports that "half the staff has taken off today because they are worried they will get it," the critical nature of the conditions – otherwise hidden from the Government and Court's view – is alarming:

> HI RICHARD, well first off the entire institution is on quarantined each unit is stuck in there own units i live in a dorm with 70 guys all on top of each other no wall seperate any one or beds the bed are bunk beds one on top one on the bottom not more then 3 feet away is another set of bunk beds common baths and showers there are 8 inmates that have corona 4 staff and today and yesterday is he first days the staff are all wearing gloves and mask no one has ever been tested in my unit OR THE INSITIUATION ... M UNIT HAS 7 INMATES IN THERE ALONE WITH THE VIRUS WE TRY TO ALL PUT UP TENT TYPE SURROUNDINGS ON OUR BOTTOM BUNKS ESPECIALLY ME BECAUSE I DO NOT WANT GUYS COUGHING AND SNEEZING ON ME BUT THE COPS AND A.W. COME AROUND AND CUT THEM DOWN NOT CARING WHO SICK WHO COUGHS WHO CHOKES AND SNEEZES ON EACH OTHER... HALF THE STAFF HAS TAKEN OFF TODAY BECAUSE THEY ARE ALL WORRIED THEY WILL GET IT THIS PLACE IS READY TO BURST AT THE SEEMS WITH THE VIRUS IF THEY ARE SAYING 7-OR 8 HAVE IT 100 HAVE IT NO TEST WERE GIVEN TO ANYONE EVER INCLUDDING ME ...,HOW I KNOW HOW MANY GUYS IN M UNIT HAVE WE PASS THE UNIT ON THE WAY BACK FROM CHOW THROUGH THE WINDOWS THEY TRLL US ,AS FOR ME I DO NOT GO OUT I EAT MY OWN COMMISSARY .... STARTING TO FEEL SICK ALL OVER AGAIN WITH SHORTINESS IN BREATH BACK ACKE COUGHING AGAIN BUT AS USUAL OUR CONCERNS FALL ON DEAF EARS ITS ALL SMOKE AND MIRRORS IN HEAR... THE LAST TIME IT TOOK AN ACT OF GOD FOR THE LT TO CALL 911 AT 4 AM BECAUSE THREE GUYS SAW ME THAT I COUNDNT BREATH AND I WAS COUGHING AND CHOKING MY BRAIN OUT,AND MY ONE FRIEND WHOM I KNOW FOR 30 YEARS TOLD THE LT I NEED TO GO TO THE HOSPITAL NOW, ALONG WITH TWO OTHER INMATES WHO PICKED UP A PHONE ONLY USED BY STAFF AND SAID GET SOME ONE UP HERE A MAN IS ON HIS DEATH BED .. THE LT SEEN THIS WAS VERY SERIOUS AND DID WHAT WAS RIGHT AND HUMAN TO GET ME OUT OF HERE BECAUSE HE SEEN I WAS ON MY DEATH BED ... PRIOR TO GOING TO THE HOSPITAL AT 4 AM IN THE MORNING I WAS AT MEDICAL FOUR DIFFERENT TIMES TO THAT WEEK, AND THE WEEK BEFORE WITH ZERO RESULTS

LEVITT & KAIZER  
ATTORNEYS AT LAW

Hon. Alvin K. Hellerstein  
March 31, 2020  
Page -3-

Mr. Castelle's condition continues to be monitored within the institution precisely because he's still at risk that the pneumonia persists; if there was no risk, then, obviously, continued monitoring would be unnecessary. The Government's claim that no inmate has tested positive certainly was made in good faith, but nonetheless was ignorant, and the BOP's failure to update its statistics – as lacking as they unquestionably are[2] – is disquieting. Moreover, as even the BOP website acknowledged as of March 30th, at least one staff member has tested positive, and, logically, that staffer has come in contact with others within the institution and has put them at risk as well. It is only a matter of when – not if – the disease breaks out at Danbury in full force if it hasn't already done so. We should not wait to react to a disaster when we now have an opportunity – perhaps our last clear opportunity – to avert one.

2. The Government's contention that prison conditions should not be considered in determining bail applications "because the Bail Reform Act 'addresses conditions of release, not conditions of detention,'" is belied by the two dozen or more cases that have considered the pandemic as a relevant factor in its decision to grant bail to defendants in BOP or other detention facilities.[3]

---

[2] The statistics only report positive tests and, as Mr. Castelle reports, tests are not routinely given even for inmates with classic COVID-19 symptoms. Nor do the BOP statistics report the number of quarantined inmates, let alone those inmates who have been tested and are awaiting results.

[3] *See, e.g.,*

- *United States v. Stephens*, — F. Supp.3d —, 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020) (Nathan, D.J.) (Bail granted to supervisee that violated release by possessing firearm.)

- *United States v. McKenzie*, 18 Cr. 834 (PAE), Doc. 443, (Mar. 30, 2020) (Bail granted to pre-sentence defendant charged with VICAR and §924(c) in furtherance of VICAR.)

- *Basank v. Decker*, No. 20 CIV. 2518 (AT), 2020 WL 1481503, at *7 (S.D.N.Y. Mar. 26, 2020) (Torres, D.J.) ("For the reasons stated above, the TRO is GRANTED. Respondents, and the Hudson, Bergen, and Essex County Correctional Facilities are ORDERED to **immediately** release Petitioners today on their own recognizance without fail.") (emphasis in original).

- *Josefina Coronel, et al., Petitioners-Plaintiffs, v. Thomas Decker, et al., Respondents-Defendants. Additional Party Names: Jose Madrid, Jose*

LEVITT & KAIZER  
ATTORNEYS AT LAW

Hon. Alvin K. Hellerstein  
March 31, 2020  
Page -4-

Moreover, the circumstances are sufficiently emergent to also invoke 28 U.S.C. § 2241 to release Mr. Castelle from dangerous conditions.[4]

3. The Government does not assert that Mr. Castelle is a flight risk but maintains that he fails to demonstrate by clear and convincing evidence that he is not a danger to the community. In fact, however, the Government consented to Mr. Castelle being on bail pending trial, *see* Doc. 19, 108 at 3 ("The Government is consenting to bail"), and he was in fact at liberty,

---

*Otero, Juan Morocho Sumba, Miguel Miranda*, No. 20-CV-2472 (AJN), 2020 WL 1487274, at *1 (S.D.N.Y. Mar. 27, 2020) (Nathan, D.J.) ("Petitioners bring this writ of habeas corpus and complaint seeking immediate release from the custody of Immigration and Customs Enforcement (ICE). For the reasons that follow, the Court GRANTS their motion for a temporary restraining order, and orders Petitioners to be immediately RELEASED from immigration detention on conditions.")

- *Jovel v. Decker*, No. 20CIV308 (GBD) (SN), 2020 WL 1467397, at *1 (S.D.N.Y. Mar. 26, 2020) (Daniels, D.J.) ("Upon conducting an independent analysis of Petitioner's separate application for immediate relief [while the COVID-19 crisis continues], this Court reaches an independent conclusion that Petitioner's emergency request should be GRANTED.")

*See also* the following cases, in which courts have granted bail to defendants in reliance, *inter alia*, on the COVID-19 pandemic. *United States v. Hudson*, 19-CR-496 (CM), Doc. 72 (S.D.N.Y. Mar. 19, 2020); *United States v. Perez*, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (Engelmayer, D.J.); *United States v. Santiago Ramos*, 20-CR-04 (ER), Doc. 21 (Mar. 19, 2020); *United States v. Vizzari*, 19 Cr. 767 (VSB), Doc. 21 (Mar. 20, 2020); *United States v. Brandon*, 19 Cr. 644 (GBD), Doc. 23 (Mar. 24, 2020); *United States v. Lopez*, 19 Cr. 323 (JSR) (March 23, 2020); *United States v. Baker*, 20 Cr. 125 (KMK), Doc. 22 (Mar. 24, 2020); *United States v. Almaleh*, 17 Cr. 25 (NSR), Doc. 400 (Mar. 27, 2020).

There are, additionally, a dozen or more similar decisions from district courts outside the Second Circuit.

[4] *See, e.g., Basank v. Decker*, No. 20 CIV. 2518 (AT), 2020 WL 1481503, at *4 (S.D.N.Y. Mar. 26, 2020) ("An application for habeas corpus under 28 U.S.C. § 2241 is the appropriate vehicle for an inmate in federal custody to challenge conditions or actions that pose a threat to his medical wellbeing.")

Case 1:18-cr-00015-AKH Document 672 Filed 03/31/20 Page 5 of 6

LEVITT & KAIZER
ATTORNEYS AT LAW

Hon. Alvin K. Hellerstein
March 31, 2020
Page -5-

gainfully employed, without incident; hence, the evidence that he is not a danger to the community is stronger now than it was pre-conviction (and during the brief post-conviction period when he was permitted to remain on bail). Mr. Castelle was able to accept work, moreover, because the Court rejected the Government's objection to modifying his bail conditions finding "Prima facie he satisfied his burden." See Doc. 173, 182 at 8. Further, the only examples the Government cites to support its claim that Mr. Castelle presents a continuing danger to the community is alleged conduct in 2012. Neither of the relevant declarants ever testified, reducing the Government's position to: that Mr. Castelle today is a risk to the community may be inferred from an uncorroborated eight-year old tape.

4. Nothing in the Government's response to the points we raise on appeal merit a finding that these are not "close" questions. The Government's response to our Point I – concerning Agent Carillo's "expert" testimony, merely cites cases approving testimony regarding "the structure, hierarchy, rules, and conduct of organized crime, organized crime terminology and code language, and the functioning of illegal gambling operations." Gov. Let at 4. That, however, is not our objection to his testimony in this case, and therefore responds not at all to the arguments we make. Rather, we demonstrate in our brief how Carillo's testimony went far beyond what the Second Circuit has approved and ventured deep into areas the Circuit has explicitly disapproved: intruding into the Government's factual case, mirroring and bolstering lay fact testimony, and acting as a conduit for unfiltered testimonial hearsay in violation of Mr. Castelle's confrontation rights. The Government maintains that "at no point did Carillo testify about what any out-of-court declarant had told him, instead explaining his own understanding of the Mafia based on numerous sources," Gov. Let at 5, when in fact Carillo acknowledged relying on statements made to him from the 50 or more confidential informants and 50 or more cooperating witnesses he had debriefed, (Tr. 160, 245), three of which he interviewed for this prosecution. (John Pennisi: Tr. 224; Peter Lovaglio: Tr. 224, 330; Joseph Anemone: Tr. 354-55). Carillo may not have been formally designated the "case agent" but by the Government's own admission he spent "hundreds of hours conducting surveillance at Lucchese social clubs," see Doc. 545 at 4, and 3500 material reflects that he participated in trial preparation and witness debriefing. Id.

The Government's attempted rebuttal of our point regarding the exclusion of cross-examination regarding Pennisi's reprehensible conduct in shooting someone he believed had an affair with a previous girlfriend, and then knocking out the teeth of another girlfriend because she supposedly had had an affair with Mr. Castelle, fares no better. The Government argues that this proposed cross was properly precluded as improper character evidence under

LEVITT & KAIZER
ATTORNEYS AT LAW

Hon. Alvin K. Hellerstein
March 31, 2020
Page -6-

Rule 404(a)(1). The Government, however, simply ignores that the evidence was not proffered simply to prove that Pennisi acted in conformance with a <u>character trait</u> but rather to prove a <u>specific</u> <u>motive</u> to falsely implicate Castelle, *i.e.*, to exact revenge for Castelle supposedly having an affair with his girlfriend. Evidence that establishes a specific motive for a witness to lie is relevant and admissible unless excludable on other grounds and, therefore, even extrinsic evidence of such a motive is admissible. *See Justice v. Hoke*, 90 F.3d 43 (2d Cir. 1996); *United States v. Yudong Zhu*, 2014 WL 5366107, at *5 (S.D.N.Y. Oct. 14, 2014) ("Unlike standard impeachment evidence, which is admissible only in limited circumstances, "[e]xtrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground."). It is, additionally, relevant and admissible under Rule 404(b) to prove Pennisi's motive to lie.

The Government argues that our appellate points regarding the gambling jury instructions and sufficiency of the evidence are not relevant to bail because Castelle must "demonstrate a likelihood of reversal as to all counts of conviction" and that "Because Count One is not likely to be reversed on these grounds, bail pending appeal is not warranted." Gov. Let at 6. We disagree with the Government's assessment of the merits of the arguments we raise in Points III of our brief (as well as Point IV), but will not further discuss them here, except to observe that, if the arguments we make in Point III are accepted, Counts One and Three – the only counts of conviction – would need be reversed.

Of course, final resolution of Mr. Castelle's appeal must await full briefing and oral argument. For present purposes, however, the Court should find that we do, in fact, raise at least one "substantial" issue, *i.e.*, an issue that presents "a close question or one that very well could be decided the other way" resulting in reversal or an eventual sentence reduction below the time Mr. Castelle would otherwise be incarcerated pending decision on appeal.

Respectfully submitted,

Richard Levitt