UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

         v.

EUGENE CASTELLE,
    a/k/a "Boobsie,"

             Defendant.

**S7 18 Cr. 15 (AKH)**
**21 Civ. 4694 (AKH)**

 

**Memorandum of Law of the United States in Opposition to**
**<u>Defendant Eugene Castelle's Motion to Vacate, Set Aside, or Correct His Sentence</u>**

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jacob R. Fiddelman
Assistant United States Attorney
    *Of Counsel*

UNITED STATES DISTRICT COURT
<u>SOUTHERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EUGENE CASTELLE,<br>　　a/k/a "Boobsie,"<br><br>　　　　　　　　Defendant. | **S7 18 Cr. 15 (AKH)**<br>**21 Civ. 4694 (AKH)** |

**Memorandum of Law of the United States in Opposition to**
**<u>Defendant Eugene Castelle's Motion to Vacate, Set Aside, or Correct His Sentence</u>**

The United States of America respectfully submits this memorandum of law in opposition to defendant Eugene Castelle's *pro se* motion (the "Motion") pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his October 2019 sentence of 77 months' imprisonment for racketeering conspiracy and related offenses. (Dkt. 767). Castelle claims that he was denied effective assistance of counsel in plea negotiations when trial counsel gave him advice about his likely Sentencing Guidelines exposure after trial that turned out to be different than those adopted by the Court, which he alleges caused him to choose to reject a plea offer that had been extended by the Government. For the reasons set forth below, Castelle's claim is without merit and should be denied without an evidentiary hearing.

## I.  BACKGROUND

Eugene Castelle is a longtime active soldier in the Luchese Crime Family of La Cosa Nostra. After his release from prison in 2008 following a prior conviction for racketeering conspiracy with the Luchese Crime Family (for which he received an 88-month sentence), Castelle immediately returned to the Luchese Crime Family and resumed his pattern of racketeering crimes.

**A.  Castelle's Offense Conduct**

The evidence presented at trial established that, from approximately 2012 to 2018, Castelle committed various racketeering acts in furtherance of his membership in the Luchese Crime Family, including illegal gambling, extortion, and wire fraud, often through the use of express and implied threats of violence.  (*See generally* Presentence Report ("PSR") ¶ 52).  The trial record reflects the following:

From 2012 to 2016, Castelle occupied the senior position in a large illegal sports gambling business established by a bookmaker named Anthony Grecco.  Although Grecco bankrolled and ran the operation on a day-to-day basis, he took his orders from Castelle, who asked for updates on the profits of the business, summoned Grecco to meetings to pay Castelle, and directed Grecco to create accounts for new bettors.  Because Castelle was a made member of the Mafia, Grecco had no choice but to obey those orders out of fear.  Castelle also provided protection to the business and instilled the fear of violence—which adheres to the Luchese Crime Family's name—necessary to collect debts from bettors.  The scope of the gambling business was substantial.  The business had hundreds of betting customers over time, making tens of thousands of bets and wagering millions of dollars per year in 2015 to 2016.  Castelle took 25% of the business's profits on a weekly basis when the business earned a profit, estimated at $25,000 to $30,000 per year, but did not have to share in the losses during weeks when the business lost money.  (PSR ¶ 53).

Castelle first joined the gambling business when Grecco (the bookmaker) asked him for assistance with another member of the Mafia, who was extorting Grecco for 50% of his profits. Relying on his own superior position in the Mafia, Castelle displaced the other mobster, in exchange for which he extracted $15,000 from Grecco and a 25% share of Grecco's future profits. Castelle subsequently extorted Grecco on an ongoing basis. Specifically, Castelle induced Grecco to take out a $40,000 loan on Castelle's behalf and then used threats of violence to force Grecco

to assume responsibility for repaying the loan.  Castelle also later altered his payment structure with Grecco from a weekly percentage to a flat, annual $10,000 tribute payment every Christmas, in exchange for continued protection.  The losses sustained by Grecco through Castelle's extortion exceeded $95,000 in total.  (PSR ¶ 54).

In 2012 and 2013, Castelle engaged in a wire fraud scheme in which he had a "no-show job" as a carpenter at a construction site in Yonkers, New York. Castelle almost never went to the job.  Despite submitting subcontracting company timesheets to the general contractor which reflected that Castelle worked at the job site on a full-time basis eight hours per day, five days per week, for approximately one year, Castelle was present at the job site only on 21 days out of 174 days for which the timesheets billed for his work.  Indeed, Castelle was recorded on a wiretap joking with a co-conspirator about the no-show job, a fraudulent scheme for which he received in excess of $80,000 in income.  (PSR ¶ 56).

## B.  Charges, Plea Offer, and Trial

Castelle was charged in indictment S7 18 Cr. 15 (AKH) in three counts.  Count One charged Castelle with participating in an illegal gambling business, in violation of 18 U.S.C. § 1955.  Count Two charged Castelle with attempted extortion, in violation of 18 U.S.C. § 1951. Count Three charged Castelle with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).

On April 9, 2019, shortly after a jury acquitted two of Castelle's co-defendants of related charges, the Government transmitted a plea offer to Castelle (the "Plea Offer").  Pursuant to the Plea Offer, the Government would accept a guilty plea to the illegal gambling count only and would dismiss the extortion and racketeering counts.  As part of the Plea Offer, the Government proposed a Sentencing Guidelines stipulation reflecting an applicable Guidelines Range of 8 to 14 months' imprisonment based on a total offense level of 10 and Criminal History Category II.

3

As set forth in Castelle's Motion and supporting declaration from trial counsel Gerald J. McMahon (the "First McMahon Decl." (Dkt. 767 at 18)), trial counsel conveyed the Plea Offer to Castelle and discussed it with him.  (Mot. at 4).  Trial counsel advised Castelle regarding the possibly applicable Sentencing Guidelines range after trial, including an "estimated" range of "approximately" 33 to 41 months' imprisonment in the specific event that Castelle were convicted of Count One and Count Three, but acquitted of Count Two.  (First McMahon Decl. ¶ 3).  After discussing the offer with counsel, Castelle decided to reject the offer and proceed to trial.

Trial commenced on May 21, 2019 and ended on May 31, 2019, when the jury returned a guilty verdict as to Count One (illegal gambling business) and Count Three (racketeering conspiracy) and a not guilty verdict as to Count Two (attempted extortion).

### C.  Sentencing, Appeal, and Motion for Compassionate Release

At sentencing, the Court concluded that the trial evidence established that Castelle had extorted bookmaker Anthony Grecco as part of the racketeering conspiracy for which he was convicted.[1]  Accordingly, the Court calculated the applicable Sentencing Guidelines range to be 51 to 63 months' imprisonment, based on a total offense level of 23 and Criminal History Category II.  (*See* 10/17/19 Sent. Tr. at 12).  After considering the Section 3553(a) sentencing factors, the Court imposed an above-Guidelines sentence of 77 months' imprisonment, concluding that such a sentence was necessary by virtue of the defendant's recidivism, lack of remorse, and need for additional deterrence.  (*Id.* at 29).

---

[1] The Court also declined to find by a preponderance of the evidence, as urged by the Government, that the defendant had committed the attempted extortion charged in Count Two, of which the defendant had been found not guilty.

4

Castelle timely appealed both his conviction and sentence, arguing among other things that the Court had erred in its sentencing findings and Sentencing Guidelines calculation. On December 2, 2020, the Second Circuit affirmed the conviction and sentence by summary order. (Dkt. 736).

Castelle thereafter filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c) and the First Step Act of 2018. By order dated March 30, 2021, this Court denied Castelle's motion for compassionate release, concluding that he had failed to establish extraordinary and compelling reasons for a sentence reduction and that, in any event, the Section 3553(a) factors weighed in favor of adhering to the original sentence. (Dkt. 752).

### D. The Section 2255 Motion and Trial Counsel Declarations

On May 25, 2021, Castelle filed the instant Motion pursuant to 28 U.S.C. § 2255, claiming that trial counsel, Mr. McMahon, had rendered ineffective assistance of counsel in plea negotiations by inaccurately estimating approximately 33 to 41 months as the likely Sentencing Guidelines range that would apply to Castelle after trial. (Mot. at 4; First McMahon Decl. ¶ 3). Castelle claims that he rejected the Plea Offer in reliance on counsel's sentencing estimate and that, had counsel accurately calculated the Sentencing Guidelines, he would have accepted the Plea Offer. (Mot. at 4).

At the direction of this Court, Mr. McMahon then filed a supplemental declaration responding to the allegations raised by Castelle in the Motion (the "Second McMahon Decl." (Dkt. 770)). Mr. McMahon stated that "[w]hether the post-trial Guidelines were 33-41 months, 51-63 months, or some different numbers entirely, the fact is that Castelle wanted a trial, regardless. Having just triumphed (with the undersigned as counsel) in a racketeering case in Brooklyn Supreme Court, which included among other charges the gambling case with co-defendant Anthony Greco [sic], Castelle wanted a dismissal or trial in SDNY." (*Id.* ¶¶ 7-8). Mr. McMahon

5

further noted that, at sentencing, he had stated on the record that he had "strongly recommended" that Castelle accept the Plea Offer, but Castelle elected to proceed to trial nevertheless.  (*Id.* ¶ 9). Mr. McMahon specified that he had "emphasized" to Castelle that his calculations were "just an estimate, that the government was likely to ask for more, and that this Court could sentence him to anywhere between" the statutory minimum and maximum sentences  (*Id.* ¶ 13).

## II.  DISCUSSION

### A.  Applicable Law

"*Habeas* review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998).[2]  To obtain collateral relief under Section 2255, a defendant must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000).  This is "significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).

Where a motion for collateral relief under Section 2255 and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court need not grant a full fact hearing to determine the issues and to make findings of fact and conclusions of law.  28 U.S.C. § 2255 (b); *see also Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009).  Where appropriate, a court can "expand the record without conducting a full-blown testimonial hearing," *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001), through the use of affidavits.  Such a "middle road" can avoid "delay, the needless expenditure of judicial resources, the burden on trial counsel and

---

[2] Unless otherwise noted, all case quotations omit internal quotation marks, citations, and alterations.

the government, and perhaps the encouragement of other prisoners to make similar baseless claims." *Chang*, 250 F.3d at 86.

### 1. Ineffective Assistance of Counsel Generally

A claim of ineffective assistance of counsel fails unless a defendant: (i) overcomes a "strong presumption" that his counsel's conduct was reasonable and shows that his representation "fell below an objective standard of reasonableness" under "prevailing professional norms," and (ii) "affirmatively prove[s] prejudice," that is, shows that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984); *accord United States v. De La Pava*, 268 F.3d 157, 163 (2d Cir. 2001). The burden is on the defendant to establish both elements. *Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* analysis, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990). A defendant cannot prevail on a claim of ineffective assistance merely because he subjectively believes that his counsel's strategic choices were inadequate. *United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986).

Under the second prong, a defendant must meet the "heavy burden" of showing "actual prejudice." *Strickland*, 466 U.S. at 692. To satisfy the prejudice prong, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693-94. A defendant cannot establish prejudice by merely showing that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have influenced the outcome undermines the reliability of

7

the result of the proceeding." *Id.* at 693.  Only where both prongs of the *Strickland* test are satisfied can it be concluded that "counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id.* at 687.

### 2.  Ineffective Assistance of Counsel Regarding Plea Offers

Criminal defendants do not have a constitutional "right to be offered a plea [agreement] . . . nor a federal right that the judge accept it." *Missouri v. Frye*, 566 U.S. 134, 148 (2012). However, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012).  "As part of this advice, counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentence to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000).

Counsel's conclusion as to how best to advise a criminal defendant in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because "[r]epresentation is an art." *Strickland*, 466 U.S. at 693.  Thus, in *Purdy*, the Second Circuit recognized that counsel rendering advice in this critical area may take into account, among other factors, "the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the Government), whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." *Purdy*, 208 F.3d at 45.  Cases addressing inaccurate sentencing calculations in this context address situations in which counsel has incorrectly advised the defendant about the statutory minimum and maximum sentences that the defendant would face after trial. *See, e.g.*, *Oyague v. Artuz*, 393 F.3d 99, 105

(2d Cir. 2004); *United States v. Harrington*, 354 F.3d 178, 185 (2d Cir. 2004); *United States v. Gordon*, 156 F.3d 371, 380-81 (2d Cir. 1998).

In order to show prejudice "where a plea offer has . . . been rejected because of counsel's deficient performance," the defendant must demonstrate a "reasonable probability" that he would have accepted the plea offer, that "the plea would have been entered without the prosecution cancelling it[,]" and that it would have resulted in "a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147. "Courts cannot rely solely on post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," but rather "must also look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Doe v. United States*, 915 F.3d 905, 912 (2d Cir. 2019) (citing *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017)).

## B. Discussion

### 1. Counsel Did Not Provide Ineffective Assistance in Connection with the Plea Offer

Castelle's assertion that counsel provided ineffective assistance in connection with his consideration of the Plea Offer should be rejected. Castelle does not assert that counsel failed to convey the Plea Offer or otherwise failed to discuss the strengths and weaknesses of his case. Nor does Castelle assert that he tried to plead guilty and was prevented from doing so by counsel.

Castelle contends only that counsel inaccurately predicted that his Sentencing Guidelines range would likely be 33 to 41 months after trial, when the Court later calculated 51 to 63 months. But the record makes clear that counsel was merely making a prediction or estimate and had appropriately caveated that estimate. Counsel affirmatively advised Castelle that the Government would likely argue for a higher range or an above-Guidelines sentence. (First McMahon Decl.

¶ 3; Second McMahon Decl. ¶ 13).[3]  Counsel also affirmatively advised Castelle that regardless of his Guidelines estimate, the Court could sentence Castelle to anything within the statutory range. (Second McMahon Decl. ¶ 13).

Accepting the Motion's description of counsel's advice as true, that advice was not constitutionally deficient.  To the contrary, counsel did everything required of him by law in connection with receipt of a plea offer:  he conveyed the offer to the defendant, discussed with him the strengths and weaknesses of the case, and ensured that the defendant understood the statutory sentencing range to which he would be exposed after trial.  Castelle cites no case in which ineffective assistance of counsel was found based on a prediction regarding the advisory (post-*Booker*) Guidelines that turned out to be slightly inaccurate after trial, as opposed to a miscalculation of the *statutory* sentencing exposure.  *See, e.g.*, *Harrington*, 354 F.3d at 185; *Gordon*, 156 F.3d at 380-81; *cf. United States v. Arteca*, 411 F.3d 315, 321 (2d Cir. 2005). Sentencing Guidelines calculations are highly fact-dependent, particularly in racketeering cases in which there are a variety of predicate criminal acts that could be factored into the determination of relevant conduct.  And it cannot always be accurately predicted what arguments of counsel a court will accept or reject.  Indeed, in this case the Court accepted the Government's assertion at sentencing that the trial evidence demonstrated one uncharged extortion (of Grecco) but rejected the Government's assertion that the trial evidence established a separate attempted extortion of which Castelle had been found not guilty by the jury (of business owner Toby Romano).

---

[3] Mr. McMahon's declaration is detailed and logical, and this Court should conclude that it is credible and reliable in providing these additional details of the conversations set forth in the Motion.  *See Chang*, 250 F.3d at 86; *Riggi v. United States*, No. 04 Civ. 7852 (JSR) (GWG), 2007 WL 1933934, at *8 (S.D.N.Y. July 5, 2007).

In any event, trial counsel had correctly advised Castelle of the possibility that the Court might calculate a higher Guidelines range: he had informed Castelle that his Guidelines prediction "was just an estimate [and] that the government was likely to ask for more." (Second McMahon Decl. ¶ 13). There is no basis to conclude that counsel's advice to Castelle, when considered in the context of its accurate caveats and accompanying warnings, was objectively unreasonable in any way, let alone so deficient as to fall below the minimum constitutional standard of performance. Castelle has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" that is at the heart of a *Strickland* analysis. *Aguirre*, 912 F.2d at 560. The Motion should be denied without a hearing.

## 2. There is No Prejudice Because the Record Establishes that Castelle Would Not Have Accepted the Plea Offer

In any event, the Motion should be rejected for the independent reason that no prejudice resulted from any alleged deficient advice. The record conclusively demonstrates that Castelle would not have accepted the Plea Offer even if trial counsel's Sentencing Guidelines predictions had been different, and the Court should discount Castelle's conclusory and self-serving assertion to the contrary as belied by the record.

Notwithstanding that trial counsel "strongly recommended" that Castelle accept the Plea Offer, Castelle refused to do so and insisted that he wanted a trial. Mr. McMahon explained that he had just successfully defended Castelle against similar charges in state court, and Castelle was determined to obtain either a "dismissal" or proceed to trial in this case, regardless of counsel's estimated sentencing exposure. (Second McMahon Decl. ¶¶ 7-8). Indeed, at Castelle's sentencing, Mr. McMahon explained on the record that Castelle had "wanted a trial" and so "got a trial," notwithstanding that he had "strongly recommended" that Castelle accept the Plea Offer. (10/17/19 Sent. Tr. at 12). Castelle did not raise any disagreement with counsel's description of

11

events.  To the contrary, Castelle's comments at sentencing underscore that he would not have accepted the Plea Offer under any circumstances.  When invited to address the Court before sentence was imposed, the defendant maintained his innocence of the crimes the Government had proven at trial.  (*Id.* at 26-28).  He stated that "What the government is saying about me is wrong. It's all wrong.  That's why I elected to go to trial . . ."  (*Id.* at 27).

Because the record conclusively demonstrates that there is no reasonable probability that Castelle would have accepted the Plea Offer had trial counsel's Guidelines estimations been slightly different, his self-serving assertions to the contrary should be discounted.  The Motion should be denied for failure to demonstrate prejudice without further factual inquiry at a hearing.

## III.  CONCLUSION

For the reasons set forth above, Castelle's Motion should be denied.


Dated: New York, New York
       July 21, 2021

                                         Respectfully submitted,

                                         AUDREY STRAUSS
                                         United States Attorney for the
                                         Southern District of New York


                                 By:     _____
                                         Jacob R. Fiddelman
                                         Assistant United States Attorney
                                         Tel.: 212-637-1024


cc:    Eugene Castelle, Reg. No. 00633-748
       FCI Danbury
       Route 37
       Danbury, CT 06811


12