UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EUGENE CASTELLE,
        Movant,

    -against-

UNITED STATES OF AMERICA,
        Respondent.

21 CV. 4694 (AKH)
18 CR. 15-10 (AKH)

## MOVANT'S REPLY TO RESPONDENT'S OPPOSITION TO MOTION UNDER 28 U.S.C. SECTION 2255

The respondent's opposition is essentially based on the Declaration of movant's trial counsel, Gerald J. McMahon, ESQ. (Doc. 770). The movant submits that Mr. McMahon's declaration is legally insufficient

-1-

to defeat his claim that he was denied the effective assistance of counsel during plea negotiations, for the reasons set forth below:

1. Mr. McMahon admits the movant's claim that he estimated the movant's guideline range upon conviction after trial on counts one and three of the indictment at 33 to 41 months. (Declaration, at paragraph 10).

2. Mr. McMahon's assertions that the movant's sworn statements are factually incorrect and that the movant wanted a trial no matter how much time he faced under the guidelines is self-serving, untrue, and defies logic. The movant was aware that he faced a maximum penalty of 25 years imprisonment if convicted of counts 1 and 3 after a jury trial, and not 20 years as asserted

-2-

by Mr. McMahon in his declaration at paragraph 13. The movant believed that the government could not sustain its burden of proof on the attempted extortion charged in Count Two, but was less certain of his chances of acquittal on Counts One and Three, and this is why he specifically asked counsel for a guideline estimate upon conviction after trial on Counts One and Three.

3. Mr. McMahon's guideline estimate of 33 to 41 months upon conviction after trial on Counts One and Three was not reasonable. (Declaration, at paragraphs 10 through 13). Moreover, Mr. McMahon's "embellished" declaration stands in stark contrast to the sworn affidavit he executed on May 10, 2021. (See Exhibit B, Doc. # 1). The movant's inquiry to

-2A-

Mr. McMahon respecting his guideline range upon conviction after trial on Counts One and Three belies Mr. McMahon's claim that the movant would have demanded a trial no matter what guideline estimate he was given. Although aware that he faced a maximum penalty of 25 years imprisonment if convicted after trial on Counts One and Three, the movant was also aware that his actual sentence upon conviction after trial would largely be determined by the sentencing guidelines, having plead guilty in a federal case on December 14, 2001.

-3-

Through minimal research, Mr. McMahon reasonably should have known that the movant's guideline range upon conviction after trial on Counts One and Three would be determined by U.S.S.G. Section 2F1.1(a), Note 1, which states:

"Where there is more than one underlying offense, treat each underlying offense as if contained in a separate count of conviction for the purposes of subsection (a)(2). To determine whether subsections (a)(1) or (a)(2) results in the greater offense level, apply Chapter Three, Parts A, B, C, and D to both (a)(1) and (a)(2). Use whichever subsection results in the greater offense level."

-4-

Because the racketeering conspiracy charged in Count Three contained predicate offenses of illegal gambling, extortion, attempted extortion, and wire fraud, Mr. McMahon clearly should have known that the guideline range upon conviction after trial on Count Three would be based on the "greater offense", extortion. Mr. McMahon's lame attempt to blame the sentencing court for his own error, in both his declaration (at paragraph 12) and in a recent article in the NY Daily News-Paper, should be dismissed by the Court as both unbelievable, and unprofessional. (see Exhibit A, herewith submitted)

-5-

4. In the movant's mind, he was willing to risk a jury trial betting on acquittal on all counts, where he was given an estimated guideline exposure of 33 to 41 months upon conviction after trial by Mr. McMahon.

5. The movant absolutely would not have risked conviction after trial had Mr. McMahon accurately advised him that his guideline exposure would top at 63 months. The movant is a family man with a special needs child at home and would not have risked being away from his family for that length of time. At movant's age and with his health problems, he simply would not have risked a

6

jury trial, then he would have known that McMahon's guideline estimate was wrong. See Lafler v. Cooper, 566 U.S. 156 (2012); United States v. Gordon, 156 F.3d 376 (2d Cir. 1998); and United States v. Booth, 432 F.3d 542, 548-550 (3d Cir. 2005) (finding that counsel's miscalculation of movant's guideline range by 19 to 30 months was sufficient to prove his claim of ineffective counsel during plea negotiations).

6. AN EVIDENTIARY HEARING IS REQUIRED

The movant submits that the plain language of Section 2255 requires an evidentiary hearing in this instance, where the core factual issues in dispute relate to matters occurring outside the privy of the Court.

-7-

See <u>Machibroda v. United States</u>, 368 U.S. 487, 494-495 (1962) and and <u>Armienti v. United States</u>, 234 F3d 820, 825 (2d Cir. 2000).

Accordingly, an evidentiary hearing should be held via tele-conference or video-conference, pursuant to the emergency standing order of the Court effective May 18, 2020. (See Exhibit B, at paragraph 3)

## CONCLUSION

The motion should be granted.

Respectfully submitted,

*[signature]*

EUGENE CASTELLE, Pro Se

Dated: July 28, 2021

-8-

Pursuant to 28 U.S.C. Section 1746, I, Eugene Castelle, under penalty of perjury, declare that the above statements are true and correct.

*Eugene Castelle*
Eugene Castelle
Dated: July 28, 2021

## PROOF OF SERVICE

This is to certify that a copy of the foregoing Movant's reply to Respondent's opposition to Motion under 28 U.S.C. Section 2255 has been mailed to Jacob Fiddelman, AUSA, 1 St. Andrews Plaza, NY, NY 10007, this 28th day of July, 2021, via First Class Mail.

Eugene Castelle

MOVANT'S EXHIBIT A

Cprintout from 6-9-21, N.Y. Daily Newspaper Column, "Gangland"

John "will answer questions where he can, and you know he's pretty forthright," said LaVecchia, noting that in addition to special insight about the mob, Pennisi "gives lessons about life and business" on the podcast, and "you can extract some value there" in a one-on-one talk, or even a "two-on-one" where you can share the cost of the session with a friend.

There is also a "broader webinar type thing where maybe you and a whole bunch of people" can have a group session with Pennisi that will cost individuals "much less money," said LaVecchia, sounding a little like the sideshow promoters Gang Land recalls seeing in Coney Island exhorting kids to c'mon in and meet the bearded lady and the two-headed chimpanzee.

LaVecchia didn't disclose the prices for any of the options, but he noted that "there is a fee structure" that is based on the "access that you want" as well as "your appetite and your budget." He instructed viewers to "click the link below" and fill out the form that asks for your name and email address. "Somebody will be in touch, and then we'll take it from there."

It's not likely that Pennisi will agree to chat with private investigators or defense lawyers for mobsters who have been convicted at trials where he testified, or that he'll let Luchese wiseguys who're expecting to be indicted based on information he's given the feds as customers of his "sitdown series with John Pennisi."

John Pennisi NY Post Photo IllustrationThen again, it wasn't likely when Pennisi was sentenced to a no jail prison term and given five years of supervised release last November that he'd be meeting up with ex-cons and cohosting a podcast that has aired more than 50 times. So you never know..

And since neither half of the podcast cited any parameters for the topics you could discuss with the Button Man or the MBA, it's likely that Pennisi would be willing to discuss, and maybe even expand on, the paranormal experience he had with his late grandparents that he shared with Jenkins.

As Gang Land reported last week, after praying to them and asking them to give him a sign to let him know if he should surrender to the FBI, Pennisi told Jenkins that he got an unmistakable one.

"I didn't live by a train station," Pennisi said. "You had to walk (there.) There was no planes flying around. It wasn't an earthquake. Gary, I swear to you, I had wine glasses and different glasses and dishes in the house. Everything was shaking in the house," he said in a high pitched voice, imitating the sound of glasses clicking, "bing bing bing bing bing bing."

"I even called my mother up and I says, 'I want you to listen to something.' This went on for hours. She says, 'What is that?' I says, 'It's the glasses. I prayed to Grandma and Grandpa. It's the glasses and the dishes and the house is shaking.' Gary, I can't even explain it. And THAT was my sign to go."

After Losing To The Jury, The Judge, And The Appeals Court, Boobsie Slams His Lawyer

Eugene CastelleWhat's a mobster to do? He made a dumb decision and rolled the dice instead of taking a sweet plea deal of eight-to-14 months in prison for gambling. At trial, he was convicted of gambling and racketeering and sentenced to 77 months.. He then lost his appeal, as well as his motion for compassionate release from the judge who had hammered him on sentencing day.

If you're Luchese mobster Eugene (Boobsie) Castelle, you blame the lawyer who advised you to take the plea deal. You then file a motion asking the trial judge to grant you a new trial on the grounds that you were denied the effective assistance of counsel during your plea negotiation.

While Castelle has no one to blame but himself for being stuck in federal prison with a release date of September 10, 2025 instead of at home in Staten Island, his new appeal is doing better than he really has any right to expect.

Manhattan Judge Alvin Hellerstein ruled this week that his pro se motion "should not be summarily dismissed as being without merit." He ordered prosecutors to respond to Boobsie's filing within 60 days. He also directed Castelle's trial attorney Gerald McMahon to respond to his former client's assertions within 30 days, "under oath."

Judge Alvin HellersteinCastelle's version is this: He claims that he rejected the plea deal after McMahon advised him that if he

were convicted of illegal gambling and racketeering, but acquitted of extortion, as he was, "he faced a guidelines sentence of 33 to 41 months imprisonment," not the 51-to-63 months guidelines that Hellerstein came up with on sentencing day.

Had McMahon "accurately advised movant," Castelle argued in his 17-page filing, "he would have accepted the government's 8 to 14 month plea offer."

Boobsie didn't mention that he was also not happy about the judge's decision to sentence him to 14 months more than his own recommended maximum prison term.

Contacted by Gang Land, the usually outspoken McMahon did not disappoint. He ripped the judge for his "senseless" guidelines finding, as well as his rulings at the trial, and Castelle for being less of a man than he always thought he was during the years he has known and represented him..

The difference between McMahon's 33-to-41 estimate and the judge's ruling of 51-63 months, McMahon said, was Hellerstein's "totally absurd" decision to "credit Castelle with extorting a gambling co-defendant that he was never even accused of extorting at any time," and adding points to his guidelines calculations.

Gerald McMahon"Pretending to be a great jurist who protects defendants' rights, Hellerstein says I should submit an affidavit under oath," said McMahon, who has already filed a one-page declaration stating that he advised Castelle that he "was facing approximately 33 to 41 months' if convicted of the gambling and racketeering but "acquitted of extortion."

"If he is so solicitous of a defendant's rights," McMahon said, "the judge should have allowed me to cross examine (turncoat mobster John) Pennisi about beating his girlfriend nearly to death for fooling around with Castelle. Instead," the lawyer continued, "he restricted my questioning of Pennisi and my closing arguments to the jury about the lowlife gangster."

"Too bad he didn't think about that during the trial," McMahon said.

"All I have to say about Mr. Castelle is that I am disappointed," said the lawyer. "I thought he was more of a man than that."

MOVANT'S EXHIBIT B
(Emergency Individual Rules of the Honorable Alvin K. Hellerstein)

# EMERGENCY INDIVIDUAL RULES OF THE
# HONORABLE ALVIN K. HELLERSTEIN
# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

### Effective May 18, 2020

**In light of the public health emergency associated with COVID-19, these rules supplement Judge Hellerstein's standard Individual Rules. Pending further order of the Court:**

1. Judge Hellerstein's Individual Rules 1.A, 1.B, and 2.F, to the extent they request courtesy copies of motions and pleadings, are suspended. Counsel shall not send courtesy copies to Chambers. Filing via the Electronic Case Filing ("ECF") system suffices.

2. All correspondence with the Court shall be submitted via ECF.

3. All proceedings will be conducted remotely. Prior to scheduled proceedings, the Court will provide notice of the procedure for telephonic or video conferencing.

4. In civil cases requiring a new or amended case management plan, the parties shall submit a proposed case management plan via ECF by the Wednesday preceding the next scheduled conference. The case management plan shall use the form attached to Judge Hellerstein's Individual Rules.

EUGENE CASTELLE-00633-748
FCI DANBURY
33½ PENBROOK RD
DANBURY CT 06811

Clerk
U.S. District of N.Y.
Southern District of N.Y.
500 Pearl Street
N.Y., N.Y. 10007

Pro Se






